**WYNNE LAW FIRM**
Edward J. Wynne (SBN 165819)
George R. Nemiroff (SBN 262058)
80 E. Sir Francis Drake Blvd., Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900
ewynne@wynnelawfirm.com
gnemiroff@wynnelawfirm.com

**CLAPP & LAUINGER, LLP**
James F. Clapp (SBN 145814)
Jamie N. Herrick (SBN 356349)
701 Palomar Airport Rd., Ste 300
Carlsbad, CA 92011
Telephone: (760) 209-6565
Facsimile: (760) 209-6565
jclapp@clapplegal.com
jherrick@clapplegal.com

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWHITNEY EMANUEL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:25-cv-7972<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dwhitney Emanuel ("Plaintiff") brings this class action on behalf of herself and all others similarly situated (the "Class Members") against defendants Farmers Insurance Exchange and Farmers Group, Inc. ("Defendants" or "Farmers").

## **INTRODUCTION**

1.    On August 22, 2025, Defendants disclosed for the first time a massive data breach (the "Data Breach") that had occurred nearly three months earlier.  On May 29, 2025, cybercriminals hacked into a database maintained by one of Defendants' vendors.  The database contained the private information of Farmers' customers, including names, addresses, dates of birth, driver's license numbers and/or truncated Social Security numbers ("Private Information").[1]

2.    By hacking into the vendor's database, cybercriminals were able to access and steal the Private Information of more than one million Farmers customers.[2]

3.    The vendor reported the Data Breach to Defendants on May 30, 2025, but Defendants waited nearly three months, until August 22, 2025, to notify the affected customers.[3]  This delay deprived Plaintiff and the Class Members of the opportunity to take immediate measures to protect themselves against potential harm.

4.    The exposed Private Information has significant value on illicit markets, particularly on the dark web, since Private Information can be used to

---

[1] Farmers' "Notice of Security Incident" https://www.farmers.com/content/dam/farmers/marketing/digital/aem/pdfs/disclosures/notice-of-incident.pdf (accessed 8/23/25).

[2] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/8e99d3e3-b1f1-4f30-bbb9-be7dfca5e281.html (accessed 8/23/25).

[3] *Supra*, n.1.

commit identity theft, open fraudulent accounts, obtain loans, file false tax returns, secure government benefits, or facilitate medical and financial fraud.[4]  The risk of misuse remains for years or even decades after the initial compromise.[5]

5.    As a direct and foreseeable result of Defendants' conduct, Plaintiff and the Class Members face a heightened and continuing risk of identity theft and fraud, have suffered loss of privacy, have spent and will continue to spend time and money on mitigation efforts, and have experienced diminution in the value of their Private Information. Plaintiff seeks damages, restitution, and injunctive relief to remedy Defendants' unlawful conduct and prevent future harm.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) in that: (1) this is a class action; (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (3) diversity of citizenship exists, as evidenced by Defendants' filings with the Maine and Massachusetts Attorneys General, which indicate at least 301 Class Members are citizens of Maine and 279 Class Members are citizens of Massachusetts, whereas Defendants are citizens of California and Delaware.

7.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) because each Defendant has its principal place of business in Woodland Hills, California.

---

[4] DigitalTrends, "Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs" (Oct. 16, 2019).
[5] U.S. Government Accountability Office, "Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" (June 2007).

## **PARTIES**

8.    Plaintiff Dwhitney Emanuel is a resident of California who, during the relevant period, was a customer of Defendants. As a condition of receiving Defendants' products and services, Plaintiff furnished her Private Information to Defendants.

9.    Defendant Farmers Insurance Exchange is an unincorporated association organized under the California Insurance Code, with its principal place of business in Woodland Hills, California.

10.    Defendant Farmers Group, Inc. is a Delaware corporation with its principal place of business in Woodland Hills, California.

11.    Together, Defendants engage in the business of providing property and casualty insurance products and related services to millions of consumers throughout the United States.[6]

## **FACTUAL ALLEGATIONS**

### A.    Defendants' Empty Promises Regarding Data Security

12.    Defendants promise their customers that they are "committed to properly safeguarding consumer personal information" and will only use personal information "in a manner that is necessary for servicing or better understanding" Farmers customers.[7]

13.    Defendants further promise to "protect the confidentiality of the personally identifiable information" customers provide and to "limit access to that information only to those with a need to know."[8]

---

[6] https://www.farmers.com/about-us/ (accessed 8/23/25)
https://www.farmers.com/privacy-center/ (accessed 8/23/25)
[8]    *Id.*

14.    To obtain products and services from Defendants, Plaintiff and the Class Members were required to provide their Private Information to Defendants. Defendants stored this data electronically, including on systems maintained by third-party vendors, and expressly represented to their customers that they would safeguard such data.[9]

15.    Defendants knew or should have known that the sensitive nature of the information they collected and maintained made Defendants and their vendors attractive targets for cybercriminals, and that a breach of such information would foreseeably result in substantial harm to affected customers.

**B.    The May 29, 2025 Data Breach**

16.    On May 29, 2025, cybercriminals gained unauthorized access to a database maintained by one of Defendants' third-party vendors.[10] This access enabled the cybercriminals to steal the Private Information of 1,071,172 Farmers customers.[11]

17.    On May 30, 2025, the vendor reported the Data Breach to Defendants. Defendants then hired a forensic team to investigate the Data Breach.  On July 24, 2025, the investigation concluded that "certain personal information related to a select population of Farmers customers was subject to unauthorized access and acquisition."[12] Nevertheless, Defendants inexplicably waited until August 22, 2025, to begin to notify affected customers.[13] This delay prevented Plaintiff and the Class Members from taking proactive measures to protect against identity theft.

---

[9] *Id.*
[10] *Supra*, n.1.
[11] *Supra*, n.2.
[12] *Supra*, n.1.
[13] *Id.*

### C.    The Value of the Compromised Information

18.    Private Information has significant value on the dark web, fetching as much as $363 per record.[14]  Criminals use such data to open fraudulent accounts, obtain loans, commit tax fraud, receive medical services under a victim's name, and even provide false information to law enforcement.[15] Once posted for sale, stolen data may be used for years, and studies have shown that data from breaches may be held for extended periods before being misused.[16]

### D.    Defendants' Failure to Adequately Protect Private Information

19.    The Federal Trade Commission ("FTC") has issued guidance outlining reasonable security practices, including limiting data retention, restricting access to sensitive data, using encryption, monitoring for suspicious activity, and promptly notifying individuals of breaches.[17]

20.    The FTC has also issued specific guidance for companies that entrust Private Information to outside vendors.  Such companies must (1) investigate the vendor's data security practices, (2) put security expectations in writing.[18]

21.    Defendants did not follow these principles and failed to act on their own awareness of increasing cyber threats to the insurance industry.  Defendants' inadequate safeguards and delayed notice to victims fell below industry standards and violated their duties to Plaintiff and the Class Members.

---

[14] Ashiq Ja, "Hackers Selling Healthcare Data in the Black Market," Infosec (July 27, 2015).

[15] FTC Consumer Advice, "What to Know About Identity Theft" (Sept. 2024).

[16] U.S. Gov't Accountability Off., GAO-07-737, "Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" (June 2007).

[17] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (accessed 8/23/25).

[18] FTC, "Protecting Personal Information, A Guide for Business." (Nov. 2016).

### E.    Defendants' Failure to Timely Notify Affected Consumers

22.    Immediate notice of a data breach is critical so that those impacted can take measures to protect themselves, such as changing passwords, placing fraud alerts, or freezing credit files. The FTC advises companies to have an intrusion detection system in place to expose breaches quickly and a rapid response plan that includes prompt consumer notification.[19]

23.    Here, Defendants waited nearly three months after learning of the Data Breach to begin sending written notices to affected individuals. This delay increased the likelihood that Plaintiff's and the Class Members' Private Information could be misused before they were even aware of the Data Breach.

### F.    The Harm Caused by the Data Breach

24.    Plaintiff and Class Members have suffered actual, present, and imminent injuries as a result of the Data Breach, including but not limited to: (1) theft of their Private Information; (2) loss of control over their Private Information and its use; (3) the present and ongoing risk of identity theft and fraud; (4) costs associated with prevention, detection, and recovery from identity theft and fraud, such as credit monitoring, credit freezes, and professional services; (5) time lost monitoring accounts, disputing fraudulent charges, and mitigating damage; (6) diminution in the value of their Private Information; (7) emotional distress, anxiety, and loss of privacy; and (8) an increase in spam calls, phishing attempts, and other unwanted contacts following the Data Breach.

25.    Stolen Private Information can be used in a variety of criminal ways. The FTC warns that identity thieves may use stolen information to open new utility accounts, drain bank accounts, run up charges on credit cards, or obtain medical

[19] *Id.*

treatment on a victim's health insurance.[20]

26.    The U.S. Government Accountability Office has reported that in some cases stolen data may be held for a year or more before being used, and once sold or posted online, fraudulent use may continue for years.[21]

27.    Plaintiff and Class Members also face increased targeting for phishing and other scams because criminals can use accurate personal details to craft convincing fraudulent messages or calls. These risks require constant vigilance and ongoing expenditure of time and money.

**G.    Continuing Risk and Need for Relief**

28.    Defendants continue to possess Plaintiff's and Class Members' Private Information. Without significant improvements to its data security systems and practices, that information remains vulnerable to further breaches. Plaintiff and Class Members have a strong interest in ensuring that Defendants implement adequate safeguards, undergoes regular third-party security audits, and provides lifetime identity theft protection to all victims of the Data Breach.

## <u>CLASS ALLEGATIONS</u>

29.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

**<u>Nationwide Class</u>:** "All individuals in the United States whose Private Information was compromised in the May 29, 2025 data breach involving customers of Farmers Insurance Exchange and Farmers Group, Inc."

**<u>California Subclass</u>:** "All members of the Nationwide Class who resided in California as of May 29, 2025."

---

[20] *Supra*, n.15.
[21] *Supra*, n.16.

Excluded from the Nationwide Class and California Subclass are officers and directors of Defendants; the judges assigned to this matter and their staff; and any immediate family members of such judges.

30.     The members of the Nationwide Class and California Subclass are so numerous that joinder of all members is impracticable. Defendants' own statements to the Maine Attorney General confirm that the Data Breach affected more than 1 million customers nationwide. The identities of the Class Members can be determined from Defendants' own records.

31.     Questions of law and fact common to the Nationwide Class and California Subclass predominate over questions affecting only individual members. These common questions include, but are not limited to: (1) whether Defendants failed to adequately safeguard Plaintiff's and the Class Members' Private Information; (2) whether Defendants owed a duty to Plaintiff and Class Members to protect their Private Information; (3) whether Defendants breached that duty by failing to take reasonable measures to secure the Private Information; (4) whether Defendants failed to timely notify Plaintiff and the Class Members of the Data Breach; (5) whether Defendants' conduct breached implied contracts with Plaintiff and the Class Members; (6) whether Defendants were unjustly enriched by retaining the benefits conferred by Plaintiff and the Class Members without providing adequate data security; (7) whether Plaintiff and the Class Members are entitled to damages and the proper measure of such damages; and (8) whether Plaintiff and the Class Members are entitled to injunctive and declaratory relief.

32.     Plaintiff's claims are typical of the claims of other Class Members in both the Nationwide Class and California Subclass, as all were subject to the same conduct by Defendants, all had their Private Information compromised in the same

Data Breach, and all suffered similar injuries as a result.

33.    Plaintiff will fairly and adequately represent the interests of both the Nationwide Class and the California Subclass. Plaintiff has no interests antagonistic to either Class and has retained counsel experienced in complex class actions, data breach litigation, and consumer protection matters who will vigorously prosecute this action.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The injuries sustained by individual Class Members are relatively small compared to the burden and expense of individual litigation, making it impracticable for them to seek redress individually. Class treatment will allow those similarly situated to prosecute their claims in a single proceeding, avoid inconsistent judgments, and promote judicial efficiency.

35.    Defendants have acted or refused to act on grounds generally applicable to both the Nationwide Class and California Subclass, making final injunctive and declaratory relief appropriate with respect to both Classes as a whole. Such relief is necessary to ensure Defendants implement and maintain adequate security measures to protect the Private Information it continues to store, and to prevent further harm to Plaintiff and Class Members.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

36.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

37.    Defendants owed Plaintiff and the Nationwide Class Members a duty to exercise reasonable care in collecting, storing, safeguarding, and protecting their Private Information from unauthorized access, disclosure, and use. This duty arose

from, among other things: the fiduciary relationship between Defendants and their customers; Defendants' express and implied promises to protect the Private Information; the nature of the data collected; statutory obligations, including those imposed by Section 5 of the FTC Act; and recognized industry standards.

38.    Defendants breached their duties by failing to implement reasonable data security measures to protect the Private Information, including, but not limited to: (1) failing to conduct adequate due diligence in the selection of their third-party vendor to ensure that the vendor maintained appropriate and industry-standard safeguards for sensitive customer data; (2) failing to include and enforce sufficient contractual provisions requiring the vendor to implement and maintain reasonable administrative, technical, and physical safeguards; (3) failing to monitor, audit, and oversee the vendor's data security practices on an ongoing basis, despite FTC guidance and industry standards requiring companies to remain responsible for the security practices of their service providers; (4) entrusting highly sensitive Private Information—including names, addresses, dates of birth, driver's license numbers, and portions of Social Security numbers—to a vendor without ensuring that such information was encrypted, anonymized, or otherwise adequately protected; (5) failing to develop and implement reasonable vendor-management protocols, such as routine security assessments, penetration testing, and compliance reporting, that would have identified vulnerabilities in the vendor's systems before the breach occurred; and (6) failing to maintain a comprehensive vendor risk management program, as required by Section 5 of the FTC Act and recognized by industry standards, which mandate that companies exercise reasonable care in overseeing third parties with access to consumer data.

39.    Defendants' acts and omissions were the direct and proximate cause

of the Data Breach and the resulting harm to Plaintiff and the Nationwide Class Members, including the theft and loss of their Private Information, loss of control over such information, heightened risk of identity theft, and the various forms of economic and non-economic damages described above.

40.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Nationwide Class Members have suffered and will continue to suffer actual damages, are entitled to compensatory and nominal damages, and seek injunctive relief requiring Defendants to implement and maintain reasonable security procedures to protect their Private Information.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

41.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

42.     In connection with obtaining products and services from Defendants, Plaintiff and the Nationwide Class Members provided their Private Information to Defendants with the mutual understanding and intent that Defendants would use reasonable measures to protect that information, safeguard it from unauthorized access, and provide prompt and adequate notice of any breach.

43.     Defendants accepted possession of Plaintiff's and the Nationwide Class Members' Private Information and, in so doing, entered into implied contracts whereby Defendants agreed to: (1) use such information for business purposes only; (2) safeguard the information with reasonable data security measures; (3) prevent unauthorized disclosure of the information; and (4) notify Plaintiff and the Nationwide Class Members promptly in the event of a data breach.

44.     Plaintiff and the Nationwide Class Members fully performed their

obligations under the implied contracts by providing their Private Information and paying for Defendants' products and services.

45.    Defendants breached the implied contracts by failing to safeguard and protect the Private Information, by allowing unauthorized access to it, and by failing to timely notify Plaintiff and the Nationwide Class Members of the Breach.

46.    As a direct and proximate result of Defendants' breach, Plaintiff and the Nationwide Class Members suffered damages as alleged herein, including the costs of mitigating potential identity theft, loss of privacy, and diminution in the value of their Private Information.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

47.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

48.    Plaintiff and the Nationwide Class Members conferred a monetary benefit upon Defendants in the form of payment for services, a portion of which was intended to fund reasonable data security measures to protect their Private Information. Plaintiff and the Nationwide Class Members also conferred a benefit by providing their Private Information, which Defendants use in the course of their business operations.

49.    Defendants retained the benefits conferred by Plaintiff and the Nationwide Class Members but failed to provide the reasonable data security they paid for and expected. Instead, Defendants used inadequate security measures, thereby retaining the benefit without providing commensurate value.

50.    It is unjust for Defendants to retain these benefits without compensating Plaintiff and the Nationwide Class Members for the harm resulting

from the Data Breach. Plaintiff and the Nationwide Class Members seek restitution, disgorgement, and all other remedies allowed by law.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**
**(CCPA)**
**(Cal. Civ. Code §§ 1798.100, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

51.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

52.     At all relevant times, each Defendant was a "business" as defined in Cal. Civ. Code § 1798.140(c), and Plaintiff and California Subclass Members were "consumers" as defined in Cal. Civ. Code § 1798.140(g).

53.     The Private Information Defendants collected and stored constitutes "personal information" as defined in Cal. Civ. Code § 1798.81.5, including but not limited to names and driver's license numbers.

54.     The CCPA, Cal. Civ. Code § 1798.150(a), provides a private right of action for any consumer whose nonencrypted or nonredacted personal information is subject to unauthorized access and exfiltration, theft, or disclosure as a result of a business's violation of its duty to implement and maintain reasonable security procedures and practices.

55.     Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information to protect it from unauthorized access, exfiltration, and disclosure, in violation of Cal. Civ. Code § 1798.150(a).

56.     As a direct and proximate result of Defendants' violations of the CCPA, the personal information of Plaintiff and the California Subclass Members

was compromised in the Data Breach.

57.    Concurrently with the filing of this complaint, Plaintiff served Defendants with the notice required by Cal. Civ. Code § 1798.150(b) and will amend this complaint to allege a claim for statutory damages when the 30-day notice period expires.    Presently, Plaintiff seeks injunctive relief to ensure Defendants implement and maintain reasonable security procedures to protect the Private Information of the California Subclass Members.

## COUNT V
## VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT (CRA)
### (Cal. Civ. Code §§ 1798.80, et seq.)
### (On Behalf of Plaintiff and the California Subclass)

58.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

59.    At all relevant times, each Defendant was a "business" that owns or licenses computerized data that includes personal information, as defined by Cal. Civ. Code § 1798.81.5(d)(1). The Private Information at issue here includes "personal information" as defined in Cal. Civ. Code § 1798.80(e).

60.    The CRA requires businesses to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect it from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5(b).

61.    Defendants failed to implement and maintain such reasonable security procedures and practices. As a result of Defendants' violation of § 1798.81.5, Plaintiff's and the California Subclass Members' personal information was stolen by unauthorized cybercriminals.

62.    The CRA also requires that any business that maintains personal information that has been subject to a security breach must disclose the breach in the most expedient time possible and without unreasonable delay. Cal. Civ. Code § 1798.82(a). Defendants failed to disclose the Data Breach to Plaintiff and the California Subclass Members without unreasonable delay, waiting more nearly three months after discovery to begin individual notifications.

63.    As a direct and proximate result of Defendants' violations of the CRA, Plaintiff and the California Subclass Members have suffered damages as alleged herein and seek all remedies available under Cal. Civ. Code §§ 1798.84(b), including compensatory damages, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and California Subclass, respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

1.    Certifying this action as a class action pursuant to Fed. R. Civ. P. 23, appointing Plaintiff as class representative for the Nationwide Class and California Subclass, and appointing Plaintiff's counsel as Class Counsel;

2.    Awarding damages to Plaintiff and the Class Members as allowed by law;

3.    Awarding restitution and disgorgement of all amounts by which Defendants were unjustly enriched;

4.    Awarding injunctive and declaratory relief, including but not limited to an order requiring Defendants to (1) implement and maintain reasonable security measures to protect the Class Members' Private Information; (2) submit to regular, independent third-party security audits; (3) provide lifetime identity theft protection

and credit monitoring for all Class Members; (4) comply with all applicable statutory and regulatory data security requirements; and (5) delete or destroy Private Information that Defendants have no reasonable business purpose to retain;

5.    Awarding Plaintiff and the Class Members reasonable attorneys' fees, costs, and litigation expenses as allowed by law;

6.    Awarding pre- and post-judgment interest at the maximum rate permitted by law; and

7.    Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all claims so triable.

DATED: August 24, 2025

Respectfully submitted,

By: _____
**WYNNE LAW FIRM**
Edward J. Wynne (SBN 165819)
George R. Nemiroff (SBN 262058)
80 E. Sir Francis Drake Blvd., Ste 3G
Larkspur, CA 94939
Tel: (415) 461-6400
Fax: (415) 461-3900
ewynne@wynnelawfirm.com
gnemiroff@wynnelawfirm.com

**CLAPP & LAUINGER, LLP**
James F. Clapp (SBN 145814)
Jamie N. Herrick (SBN 356349)
701 Palomar Airport Rd., Ste 300
Carlsbad, CA 92011
Telephone: (760) 209-6565
Facsimile: (760) 209-6565
jclapp@clapplegal.com
jherrick@clapplegal.com

*Counsel for Plaintiff and the Putative Class*