ISABELLE ORD (SBN 198224)
ANDREW SERWIN (SBN 179493)
MATTHEW DANAHER (SBN 351055)
isabelle.ord@us.dlapiper.com
andrew.serwin@us.dlapiper.com
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFFREY DEGROOT (*pro hac vice application pending*)
jeffrey.degroot@us.dlapiper.com
VIRGINIA WEEKS (*pro hac vice application pending*)
virginia.weeks@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| *In re Farmers Security Incident Litigation*<br><br>This Document Relates to: All Actions | Case No. 2:25-cv-07972-MWF(AYPx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: Oct. 19, 2026<br>Time: 10:00 a.m. via Zoom<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 19, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, Courtroom 5A, located at 350 W 1st Street, Los Angeles, CA 90012, via Zoom per agreement of counsel and the Court's order (Dkt. 43), Defendants Farmers Insurance Exchange ("FIE"), Farmers Group Inc. ("FGI"), Farmers New World Life Insurance Company ("FNWL"), Truck Insurance Exchange ("Truck"), and Fire Insurance Exchange ("Fire") (collectively, "Farmers") will and hereby do move this Court for an order dismissing Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Motion is made under Rule 12(b)(1) on the ground that Plaintiffs fail to allege Article III standing to pursue their claims. Plaintiffs fail to adequately allege an injury-in-fact that is traceable to the alleged conduct because they do not allege the disclosure of sensitive information or explain how the alleged harms were caused by the exposure of this non-sensitive information. **Indeed, all Plaintiffs' full Social Security numbers were already exposed in prior security incidents** before the May 29, 2025 security incident alleged here (the "Incident"). Further, Plaintiff Christina Scorio already sued another company in 2025 for allegedly disclosing her Social Security number, thereby establishing that her alleged harms are not traceable to Farmers.

This Motion is made under Rule 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted as to all Plaintiffs and all causes of action.

Plaintiffs' common-law claims all fail for numerous reasons:

- Plaintiffs' common-law claims are alleged on behalf of a nationwide class, but Plaintiffs do not allege which state's law governs each claim. *See, e.g.*, *Romero v. Flowers Bakeries, LLC*, 2016 WL 469370, at *12

(N.D. Cal. Feb. 8, 2016) (rejecting a nationwide class where state law not alleged).

- Plaintiffs' negligence claim fails under the economic loss doctrine, which precludes Plaintiffs from recovering purely economic losses under tort theories when the parties' dispute is governed by a contract. Plaintiffs allege harms arising from their purchase of insurance policies from Farmers, which are express contracts that incorporate Farmers' Privacy Policy and therefore govern this dispute.
- Plaintiffs' negligence claim also fails because they do not allege damages or any harm attributable to Farmers.
- Plaintiffs' negligence per se claim is not recognized under the laws of California, Michigan, Texas, Nebraska, and Pennsylvania.
- Plaintiffs' fiduciary duty claim fails because they do not allege the existence of a fiduciary relationship between Plaintiffs and Farmers, and an insured/insurer relationship is not a fiduciary relationship.
- Plaintiffs' breach of confidence claim fails because it is either not a recognized cause of action or requires an affirmative disclosure not present where a third-party gains unauthorized access to data.
- Plaintiffs' invasion of privacy claims under the common law and the California Constitution both fail because Plaintiffs allege a third-party stole their information and not that Farmers intentionally intruded upon Plaintiffs' privacy.
- Plaintiffs' breach of implied contract claim fails because express contracts (Plaintiffs' insurance policies) govern their claims. In the alternative, Plaintiffs fail to allege the existence of an implied contract, or even to specify which entity is the counter-party to the alleged contract.

- Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs have express contracts with Farmers, and the claim is also duplicative of the implied contract claim.
- Plaintiffs' unjust enrichment claim fails because express contracts (Plaintiffs' insurance policies) govern this dispute. Regardless, (1) Plaintiffs also do not allege they did not receive their insurance policies or coverage under those policies in exchange for their policy premiums or (2) Plaintiffs do not adequately allege that providing their information to Farmers constituted a cognizable benefit.

Plaintiffs' Driver's Privacy Protection Act ("DPPA") claim fails because the DPPA requires, but Plaintiffs do not allege, the knowing disclosure of information by Farmers from a DMV/motor vehicle record. Rather, the Complaint makes clear that Plaintiffs themselves provided their information to Farmers for the purchase of their insurance policies. Compl. ¶¶ 162-63, 179-80, 199-200, 219-220, 239-40, 256-57, 275-76, 294-95.

Finally, all of Plaintiffs' state statutory claims fail:

- Plaintiffs are not entitled to equitable relief under any statute or claim because they allege an adequate legal remedy. Compl. ¶¶ 343, 351, 361, 375, 417, 442, 473, 481, 493, 501, 511, 522 (seeking damages under negligence and contract theories, DPPA, and state statutes), Prayer (requesting "actual, compensatory, and/or statutory damages, and punitive damages"). Specifically as to the California Unfair Competition Law ("UCL"), California Constitution, and Nebraska Unfair Deceptive Trade Practices Act ("NUDTPA"), those claims must be dismissed because they only permit equitable relief.
- Plaintiffs' consumer-protection statute claims under the UCL, Michigan Consumer Protection Act ("MCPA"), Nebraska Consumer Protection Act

(“NCPA”), New Jersey Consumer Fraud Act (“NJCFA”), Pennsylvania Unfair Trade Practices Consumer Protection Law (“PUTPCPL”), and Texas Consumer Protection Act (“TCPA”) all fail to allege with specificity the fraudulent conduct necessary for any of their fraud-based statutory claims under Rule 9(b)’s heightened pleading standard or any unfair conduct.

- Plaintiff Dawn Harris’s claim under the California Consumer Privacy Act (“CCPA”) fails because she did not send the requisite notice 30 days before filing her claims and Farmers cured Harris’s claimed violations. *See* Request for Judicial Notice (“RJN”).
- Plaintiff Dawn Harris’s claim under the California Consumer Credit Reporting Act (“CCRA”) fails to allege a cognizable harm.
- Plaintiff Christina Scorio cannot maintain a claim under the New Jersey Customer Security Breach Disclosure Act (“NJ Disclosure Act”) because it does not provide a private right of action.

Finally, Plaintiffs cannot maintain a standalone cause of action for declaratory or injunctive relief because these are remedies, not independent causes of action.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declarations of Jeffrey DeGroot (“DeGroot Decl.”), Rachael Witkowski (“Witkowski Decl.”), and Rachel Robinson (“Robinson Decl.”), the pleadings and papers on file in this action (including all actions consolidated into this action), and such oral and documentary evidence and argument as may be presented at the hearing on this Motion.

This Motion is made following a telephonic conference of counsel pursuant to Local Rule 7-3, which took place on June 10, 2026, where the parties discussed the substance and potential resolution of this Motion, but were unable to resolve those issues, necessitating this Motion. DeGroot Decl., ¶ 2.

Dated: June 18, 2026

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
Isabelle Ord
Attorney for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 17

II. PLAINTIFFS' ALLEGATIONS ..... 18

III. LEGAL ARGUMENT ..... 19

A. Legal Standard ..... 19

B. Plaintiffs Lack Article III Standing. ..... 19

1. Potential Future Identity Theft is Not a Cognizable Injury. ..... 20

2. Any Fraudulent Activity is Not Traceable to the Incident. ..... 21

3. Plaintiffs' Other Purported Harms Do Not Create Standing. ..... 22

C. Plaintiffs' Common-Law Claims Must be Dismissed for Failure to Allege the State Law that Governs. ..... 24

D. Plaintiffs' Common-Law Claims Fail. ..... 25

1. Plaintiffs' Negligence Claim Fails under the Economic Loss Doctrine. ..... 25

2. Plaintiffs Do Not Adequately Allege Damages. ..... 26

3. Plaintiffs Cannot Assert Negligence Per Se Claim. ..... 26

4. Plaintiffs Fail to Allege Breach of Fiduciary Duty Because an Insurer is Not an Insured's Fiduciary. ..... 27

5. Plaintiffs Fail to Allege Breach of Confidence Because it is Not a Cause of Action or Otherwise Requires an Affirmative Disclosure. ..... 27

6. Plaintiffs Fail to Allege Invasion of Privacy Because They Cannot Allege Farmers Intentionally Intruded on Their Privacy. ..... 28

7. Plaintiffs Cannot Allege Breach of Implied Contract Because Their Insurance Policies are Express Contracts with Farmers. ..... 28

8. Plaintiffs Cannot Sustain a Duplicative Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ..... 29

9. Plaintiffs Fail to Allege Unjust Enrichment. ..... 30

E. Plaintiffs Fail to Allege a DPPA Claim. ..... 31

1. Plaintiffs Cannot Allege a Knowing Disclosure. ..... 31

2. Plaintiffs Do Not Allege Their Information Came from a Motor Vehicle Record. ..... 32

F. Plaintiffs Fail to Allege State Statutory Causes of Action. .... 32

1. Plaintiffs Have an Adequate Remedy at Law. .... 32

2. Plaintiffs Fail to Plead Any Consumer-Protection Statute Claims. .... 34

3. Plaintiff Harris Does Not Allege a Claim Under the CCPA. .... 35

4. Harris Fails to Allege Cognizable Harm under the CCRA. .... 36

5. Scorio Fails to Allege a New Jersey Disclosure Act Claim. .... 37

G. There is No Standalone Claim for Declaratory and Injunctive Relief. .... 37

IV. CONCLUSION .... 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abellard v. Stretto, Inc.*,
2025 WL 1674265 (C.D. Cal. Apr. 25, 2025) .......... 21, 22

*Abnet v. Coca-Cola Co.*,
786 F. Supp. 2d 1341 (W.D. Mich. 2011) .......... 25

*Alexander v. Progressive Advanced Ins. Co.*,
2024 WL 3106185 (E.D. Pa. June 24, 2024) .......... 28

*Allen v. Vertafore, Inc.*,
2021 WL 3148870 (S.D. Tex. June 14, 2021) .......... 30

*Am. Driver Serv., Inc. v. Truck Ins. Exch.*,
631 N.W.2d 140 (Neb. 2001) .......... 26

*In re Am. Fin. Resources, Inc. Data Breach Litig.*,
2023 WL 3963804 (D.N.J. Mar. 29, 2023) .......... 26

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2023 WL 8540911 (D.N.J. May 5, 2023) .......... 27

*In re Ambry Genetics Data Breach Litig.*,
2021 WL 2935303 (C.D. Cal. Apr. 7, 2021) .......... 20

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 26

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......... 30

*Angus v. Flagstar Bank, FSB*,
2025 WL 937760 (E.D. Mich. Mar. 27, 2025) .......... 33, 34

*Antman v. Uber Techs., Inc.*,
2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .......... 19, 20, 21

*Antman v. Uber Techs., Inc.*,
2018 WL 2151231 (N.D. Cal. May 10, 2018) .......... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 18

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .................................................................... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................. 18

*Bret Binder v. Westar Mortg., Inc.*,
2016 WL 3762710 (E.D. Pa. July 13, 2016) ............................................... 33

*Brett v. Brooks Bros. Grp., Inc.*,
2018 WL 8806668 (C.D. Cal. Sept. 6, 2018) ............................................... 19

*Burton v. William Beaumont Hosp.*,
373 F. Supp. 2d 707 (E.D. Mich. 2005) ...................................................... 28

*Butler v. Clarendon Am. Ins. Co.*,
317 F. App'x 648 (9th Cir. 2009) ................................................................ 26

*Cal Creations, LLC v. Barbato*,
2025 WL 2896937 (D. Neb. Oct. 10, 2025) ................................................. 33

*Century Indem. Co. v. URS Corp.*,
2009 WL 2446990 (E.D. Pa. Aug. 7, 2009) ................................................. 29

*Chen v. Hillsdale Coll.*,
2024 WL 6821096 (W.D. Mich. Sept. 13, 2024) ........................................... 33

*Chen v. JPMorgan Chase Bank, N.A.*,
745 F. Supp. 3d 1025 (C.D. Cal. 2024) ...................................................... 36

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................. 18, 21

*Donahue v. Fed. Nat'l Morg. Ass'n*,
2014 WL 1305017 (E.D. Mich. Mar. 31, 2014) ............................................ 29

*Dugas v. Starwood Hotels & Resorts WorldWide, Inc.*,
2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ................................................ 35

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .......................................................... 30

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (2015) .......... 22

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
2024 WL 5659583 (E.D. Mich. Sept. 30, 2024) .......... 20

*Friedman v. Merck & Co.*,
107 Cal. App. 4th 454 (2003) .......... 25

*Gardiner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 25

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) .......... 32

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......... 19, 22, 23

*Griffey v. Magellan Health Inc.*,
2022 WL 1811165 (D. Ariz. June 2, 2022) .......... 34

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 28

*Harris v. LSP Products Group, Inc.*,
2021 WL 2682045 (E.D. Cal. June 30, 2021) .......... 23

*Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) .......... 25

*Hux v. S. Methodist Univ.*,
819 F.3d 776 (5th Cir. 2016) .......... 28

*In re Illuminate Educ. Data Sec. Incident Litig.*,
2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) .......... 21, 22

*Johnson v. Cornerstone Nat'l Ins. Co.*,
2024 WL 5265372 (W.D. Mo. Apr. 29, 2024) .......... 30

*Johnson v. Enriquez*,
460 S.W.3d 669 (Tex. App. 2015) .......... 26

*Kavehrad v. Vizio, Inc.*,
2022 WL 16859975 (C.D. Cal. Aug. 11, 2022) .......... 24

*King v. Baylor Univ.*,
46 F.4th 344 (5th Cir. 2022) .... 28

*Kovalev v. Lidl US, LLC*,
647 F. Supp. 3d 319 (E.D. Pa. 2022) .... 26

*Kresal v. Secura Ins. Holdings, Inc.*,
2018 WL 2899694 (W.D. Wisc. June 11, 2018) .... 31

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) .... 19

*Lenhoff Enterprises, Inc. v. United Talent Agency, Inc.*,
2015 WL 7008185 (C.D. Cal. Sept. 18, 2015) .... 36

*Livingstone v. Haddon Points Manager, LLC*,
2020 WL 902218 (D.N.J. Feb. 25, 2020) .... 29

*Logan v. Marker Grp., Inc.*,
2024 WL 3489208 (S.D. Tex. July 18, 2024) .... 26

*McDonough v. Anoka Cnty.*,
799 F.3d 931 (8th Cir. 2015) .... 30

*Milan v. JPMorgan Chase Bank, N.A.*,
2025 WL 3295323 (C.D. Cal. Nov. 26, 2025) .... 29

*Miller v. NextGen Healthcare, Inc.*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024) .... 35

*Miranda v. Field Asset Servs.*,
2013 WL 3283701 (S.D. Cal. June 27, 2013) .... 24

*Moore v. Rodriguez*,
2021 WL 2222590 (S.D. Cal. June 2, 2021) .... 32

*Morales v. Conifer Revenue Cycle Sols., LLC*,
2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) .... 19, 25

*Mossazadeh v. Monahan Prods., LLC*,
2026 WL 413739 (C.D. Cal. Jan. 14, 2026) .... 32

*In re MOVEit Customer Data Sec. Breach Litig.*,
2025 WL 2179475 (D. Mass. July 31, 2025) .... 35

*Musk v. OpenAI, Inc.*,
795 F. Supp. 3d 1179 (N.D. Cal. 2025)....................28

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024)....................29, 30

*In re ZF-TRW Airbag Control Units Products Liab. Litig.*,
601 F. Supp. 3d 625, 763 (C.D. Cal. 2022)....................33

*Mahoney v. Fidelity Nat'l Title Co.*,
2008 WL 4286934 (C.D. Cal. Sept. 15, 2008)....................30

*Mapsong PC v. Blue Shield of Calif. Life and Health Ins. Co.*,
780 F. Supp. 3d 939, 943 (2024)....................28

*Ocasio v. Riverbay Corp.*,
2007 WL 1771770 (S.D.N.Y. June 19, 2007)....................31

*Patterson v. Medical Review Inst. of Am., LLC*,
2022 WL 2267673 (N.D. Cal. June 23, 2022)....................22

*Polkowski v. Jack Doheny Companies, Inc.*,
2025 WL 3079358 (E.D. Mich. Nov. 4, 2025)....................20, 21

*Quiroz v. Seventh Ave. Center*,
140 Cal. App. 4th 1256 (2006)....................25

*Reinbrecht v. Walgreen Co.*,
16 Neb. App. 108, 113 (2007)....................32

*Rhynes v. Stryker Corp.*,
2011 WL 2149095 (N.D. Cal. May 31, 2011)....................31

*Rodriguez v. Just Brands USA, Inc.*,
2021 WL 1985031 (C.D. Cal. May 18, 2021)....................23

*Romero v. Flowers Bakeries, LLC*,
2016 WL 469370 (N.D. Cal. Feb. 8, 2016)....................23

*In re Salesforce Customer Sec. Incident Litig.*,
No. 3:25-cv-07232- JSC (N.D. Cal.)....................17

*Scheele v. Rains*,
292 Neb. 974 (2016)....................26

*Scifo v. Alvaria, Inc.*,
2024 WL 4252694 (D. Mass. Sept. 20, 2024) .......... 20

*SCP Distributors, LLC v. Nicholas Pools Inc.*,
2023 WL 6130635 (D.N.J. Sept. 19, 2023) .......... 28

*Siegler v. Best Buy Co. of Minn., Inc.*,
519 F. App'x 604 (11th Cir. 2013) .......... 31

*Smith v. Sabre Corp.*,
2017 WL 11678765 (C.D. Cal. Oct. 23, 2017) .......... 20, 27, 33

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 31, 32

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 25

*Spokeo v. Robins*,
578 U.S. 330 (2016) .......... 18

*Stock West, Inc. v. Confederated Tribes of Colville Reservation*,
873 F.2d 1221 (9th Cir. 1989) .......... 18

*Tomek v. Apple Inc.*,
636 F. App'x 712 (9th Cir. 2016) .......... 32

*Torres v. Wendy's Int'l, LLC*,
2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) .......... 36

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 19

*Travis v. Assured Imaging LLC*,
2021 WL 1862446 (D. Ariz. May 10, 2021) .......... 22

*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024) .......... 33

*In re Uber Techs, Inc. v. Data Sec. Breach Litig.*,
2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) .......... 19, 22

*Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*,
346 F. Supp. 3d 880 (N.D. Tex. 2018) .......... 33

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 33

*Villaflor v. State Farm. Mut. Auto. Ins. Co.*,
2011 WL 13161246 (E.D. Mich. Mar. 29, 2011) .......... 26

*Virgin Scent, Inc. v. BT Supplies W., Inc.*,
615 F. Supp. 3d 1118 (C.D. Cal. 2022) .......... 24

*Wayne Duddlesten, Inc. v. Highland Ins. Co.*,
110 S.W.3d 85 (Tex. App. 2003) .......... 26

*Whitaker v. BPP E. Union LLC*,
2020 WL 13991927 (C.D. Cal. Dec. 11, 2020) .......... 18

*Widjaja v. JPMorgan Chase Bank, N.A.*,
2019 WL 8108716 (C.D. Cal. Nov. 19, 2019) .......... 24

*Wright v. Smart ERP Sols., Inc.*,
2026 WL 523684 (N.D. Cal. Feb. 25, 2026) .......... 23

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015) .......... 22

**Statutes**

18 U.S.C. § 2724 .......... 29

Cal. Civ. Code § 1798.150(b) .......... 34

Michigan Consumer Protection Act .......... 33

N.J. Stat. Ann. § 56:8-163 .......... 35

**Other Authorities**

Cal. Const. art. I, § 7 .......... 27, 32

Cal. Const. art. I, § 14 .......... 27, 32

Cal. R. Ct. 1.201(a)(1) .......... 19

Fed. R. Civ. P. 5.2(a)(1) .......... 19

Fed. R. Civ. P. 9(b) .......... 16, 32, 33

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 18

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is about a limited security incident, affecting only non-sensitive information, brought by Farmers policyholders who already had far more sensitive information exposed through prior breaches—and who have contracts with Farmers governing this dispute. Plaintiffs' complaint ignores these truths, which undercut the pleaded claims and require dismissal for the following reasons.

First, Plaintiffs lack Article III standing. Because Plaintiffs allege only non-sensitive information was exposed, driver's license numbers ("DLNs") and the last four digits of their Social Security Numbers ("SSNs"), their central theory of harm—potential future identity theft—is not a cognizable injury-in-fact. Plaintiffs' remaining injury theories involving claimed present harms are equally faulty because (1) the non-sensitive exposed information could not have caused the alleged harms and (2) Plaintiffs' **full** SSNs were exposed through prior breaches and already available on the dark web. It is not plausible that Plaintiffs' alleged present harms were caused by the exposure of non-sensitive information when truly sensitive information was already exposed.

Second, even if Plaintiffs have standing, Plaintiffs' common-law claims must be dismissed. Plaintiffs' express contracts with Farmers, incorporating Farmers Privacy Policy, govern this dispute, voiding the negligence, implied-contract, and fiduciary duty claims.

Third, Plaintiffs' DPPA claim fails because there is no **knowing** disclosure of information **from a DMV**.

Fourth, Plaintiffs' causes of action under various state statutes also miss the mark. Plaintiffs are not entitled to seek equitable relief under any statute because they allege an adequate legal remedy. Plaintiffs separately fail to allege the fraudulent conduct necessary for any of their fraud-based claims, let alone facts sufficient to satisfy Rule 9(b), and other statute-specific elements.

Farmers respectfully requests the Court dismiss the Complaint in its entirety.

## II. PLAINTIFFS' ALLEGATIONS

On May 29, 2025, "cybercriminals infiltrated" a Salesforce database through a social-engineering attack on a Farmers vendor (the "Incident"). Compl. ¶¶ 2, 5 n.3, 25, 37, 46, 50.[1] The threat actors "impersonate[d] Salesforce employees" and convinced the Farmers vendor to enable access to Farmers Salesforce database. *Id.* ¶ 47. The threat actors allegedly obtained some combination of names, addresses, dates of birth, DLNs, and/or the last four digits of SSNs.[2] *Id.* ¶¶ 2, 46.[3] Farmers discovered the Incident on May 30, 2025 and provided notice on August 22, 2025. DeGroot Decl. Exs. D-K; Compl. ¶¶ 4-5, 46, 168, 186, 205, 225, 245, 262, 282, 300.

Plaintiffs' core theory is that they are at risk of future identity theft. *Id.* ¶¶ 60, 87, 113, 177, 197, 217, 237, 254, 273, 292, 312. Plaintiffs allege on "information and belief" that their information "has already been published—or will be published—on the Dark Web," and McGlynn alleges that her information was "found leaked on the Dark Web." *Id.* ¶¶ 170, 188, 207, 227, 247, 264, 284, 302-03. Two Plaintiffs allege fraudulent activity. *See Id.* ¶ 191 (Scorio alleges "cybercriminals … placed fraudulent charges on her bank account"), ¶¶ 210-11 (Harris alleges "cybercriminals … opened a fraudulent credit account" and "placed a fraudulent charge"). Four Plaintiffs allege increased spam communications. *Id.* ¶¶ 192, 212, 231, 287. Three Plaintiffs allege they purchased credit monitoring services, although Farmers provided two years of free credit monitoring. *Id.* ¶¶ 230, 268, 306, 5 n.3. Plaintiffs also allege time and money spent "attempting to mitigate" the Incident, "emotional distress," "invasion of

---

[1] Plaintiffs' counsel also sued Salesforce, alleging Salesforce failed to secure this platform. *In re Salesforce Customer Sec. Incident Litig.*, No. 3:25-cv-07232- JSC (N.D. Cal.) at Dkt. 81.

[2] Plaintiffs define this information as "Private Information." Compl. ¶ 2.

[3] Plaintiff McCulloch had only his name and birthday exposed, and Plaintiff Geelen had only her name, birthday, and DLN exposed. *Id.* ¶¶ 168, 225; RJN; DeGroot Decl. D, J.

privacy," "diminution in the value" of their personal information, and loss of the "benefit of the bargain" as Farmers policyholders. *Id.* ¶¶ 171-76, 189-90, 193-96, 208-09, 213-16, 228-29, 232-36, 248-53, 265-67, 269-72, 285-86, 288-91, 304-05, 308-11. Plaintiffs also claim harm due to a "three-month delay[]" in notice of the Incident. *Id.* ¶ 160.

## III. LEGAL ARGUMENT

### A. Legal Standard

A complaint must be dismissed if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Courts presume a lack of jurisdiction "unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Whitaker v. BPP E. Union LLC*, 2020 WL 13991927, at *2 (C.D. Cal. Dec. 11, 2020) (Fitzgerald, J.).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### B. Plaintiffs Lack Article III Standing.

Under Article III, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). The injury must be "concrete, particularized, and actual or imminent," not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "**Allegations of possible future injury are not sufficient**" for imminence. *Id.* (emphasis added). "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).

### 1. Potential Future Identity Theft is Not a Cognizable Injury.

Claims of possible future harm following a data breach do not establish an injury-in-fact unless "highly sensitive personal data" is exposed. *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227 (N.D. Cal. 2022) (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)); *Brett v. Brooks Bros. Grp., Inc.*, 2018 WL 8806668, at *3 (C.D. Cal. Sept. 6, 2018) (no standing where information included "names, credit and debit card numbers (along with card expiration dates and verification codes)").

Here, the alleged exposure of names, addresses, birthdays, DLNs, and/or truncated SSNs does not create a credible risk of future identity theft. Compl. ¶ 2.

There is certainly no Article III standing for McCulloch (only name and birthday exposed) or Geelen (name, birthday, DLN exposed). DeGroot Decl. Exs. D, J. Names and birthdates are not sensitive. *See Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396, at *4 (C.D. Cal. Mar. 31, 2025) ("In the Ninth Circuit, whether a data breach is likely to cause 'real and immediate harm' rather than just 'conjectural or hypothetical' harm turns on the kinds of data breached.").

Exposed DLNs also do not create a credible risk of fraud. *See, e.g.*, *Greenstein*, 585 F. Supp. 3d at 1228-29 (dismissing given disclosure of only names, addresses, and DLNs); *In re Uber Techs, Inc. v. Data Sec. Breach Litig.*, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) (same); *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (no increased risk of identity theft based on names and DLNs).

The last four digits of SSNs also do not create a cognizable risk of identity theft. Indeed, federal and state courts allow **public filings** to include the last four digits of SSNs, making this information widely available and not sensitive. *See, e.g.*, Fed. R. Civ. P. 5.2(a)(1) (filings must redact all but last four SSN digits); CA Rule of Court 1.201(a)(1) (same); *see also Beck v. McDonald*, 848 F.3d 262, 267 (4th Cir. 2017) (no risk of future identity theft where last four SSN digits exposed); *Scifo v. Alvaria, Inc.*,

2024 WL 4252694, at *5 (D. Mass. Sept. 20, 2024) (where last four SSN digits exposed, plaintiffs "have not established the information stolen was particularly sensitive"). The exposure of information that can be publicly filed does not create an injury-in-fact.

**2. Any Fraudulent Activity is Not Traceable to the Incident.**

Plaintiffs assert present harms—but "injury from a data breach" requires "a logical connection" between the injury and data breach. *Smith v. Sabre Corp.*, 2017 WL 11678765, at *3 (C.D. Cal. Oct. 23, 2017) (quotation omitted). "[P]urely temporal connections are often insufficient." *Id.* (citation omitted). The harm resulting from a breach must be traceable to the information exposed in *that* breach. *See Antman*, 2015 WL 6123054, at *11.

When information is already available on the internet from prior breaches, courts routinely hold that alleged harms are not traceable to the later incident. *See, e.g.*, *Polkowski v. Jack Doheny Companies, Inc.*, 2025 WL 3079358, at *7 (E.D. Mich. Nov. 4, 2025) (no traceability where information was disclosed in previous breaches and plaintiff offered no "affirmative evidence" in response); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, 2024 WL 5659583, at *8 (E.D. Mich. Sept. 30, 2024) (same).

Here, Scorio and Harris cannot link their allegations of fraudulent banking and credit activity to this Incident. Compl. ¶¶ 191, 211. Neither alleges the exposure of information that would enable these fraudulent activities, such as bank account or credit information. *See In re Ambry Genetics Data Breach Litig.*, 2021 WL 2935303, at *2 (C.D. Cal. Apr. 7, 2021) (no traceability where plaintiffs allege unauthorized charges but not "that their credit card numbers were stolen in the breach"); *Scifo*, 2024 WL 4252694, at *4 (no traceability where plaintiffs "provide no explanation for how the disclosure of … loan numbers and balances, telephone numbers, mailing addresses, and the last four digits of Social Security numbers could be parried into unauthorized debit purchases").

Moreover, Plaintiffs' allegations that this fraudulent activity is traceable to the Incident are not plausible because Plaintiffs' **full** SSNs were already available on the dark web before the Incident. *See* Robinson Decl. ¶¶ 7-8. Scorio also admits her SSN was disclosed before the Incident in a separate lawsuit involving a January 2025 data breach. DeGroot Decl. Ex. L ¶¶ 6, 30, 41. This previously exposed information could actually have caused the fraudulent activities Plaintiffs allege.

**3. Plaintiffs' Other Purported Harms Do Not Create Standing.**

Plaintiffs also allege a series of generalized harms, none of which create standing. *See* Compl. ¶¶ 170-78, 188-98, 207-18, 227-38, 247-55, 264-74, 284-93, 303-05, 308-13. Even if these harms did not fail on traceability grounds, *see supra* § III.B.2; *Polkowski*, 2025 WL 3079358, at *7, they do not create standing:

<u>Mitigation</u>: Mitigation efforts do not establish standing without a credible threat of future harm. A plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416; *see also, e.g., Antman*, 2015 WL 6123054, at *11 (where names and DLNs disclosed, "mitigation expenses do not qualify as injury; the risk of identity theft must first be real and imminent"). Purchasing unnecessary credit monitoring and investigating speculative risks cannot create standing.

<u>Emotional distress</u>: Emotional distress does not establish an injury-in-fact absent a credible threat of future identity theft. *See Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *7 (C.D. Cal. Apr. 25, 2025) ("emotional distress" allegations fail to establish standing where "Plaintiffs failed to allege an imminent and substantial risk of identity theft"); *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *4 (C.D. Cal. Apr. 19, 2023) (same). Plaintiffs do not allege any credible risk of future fraud. *Supra* III.B.1.

<u>Spam communications</u>: "Receipt of spam, absent any other injury, is insufficient to establish an injury for the purposes of standing." *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *3; *see also Abellard*, 2025 WL 1674265, at *6

("[A]lleged receipt of spam, 'absent any other injury, is insufficient to establish an injury [in fact] for the purposes of standing'").

Diminished value of personal information: Plaintiffs must—but do not attempt to—plead facts showing "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Greenstein*, 585 F. Supp. 3d at 1229 (diminished value allegations insufficient where Plaintiffs did not show how data breach "caused their names, addresses, and driver's license numbers to be less valuable than before the breach" or that "they had plans to sell" this information.); *Patterson v. Medical Review Inst. of Am., LLC*, 2022 WL 2267673, at *3 (N.D. Cal. June 23, 2022) (same).

Privacy: Plaintiffs' cursory allegations that their privacy was invaded, *see, e.g.*, Compl. ¶¶ 174, 194, do not create standing. *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury."); *In re Uber*, 2019 WL 6522843, at *5 ("conclusory allegation that the breach[] caused [plaintiff] a loss of privacy" insufficient to create standing); *Travis v. Assured Imaging LLC*, 2021 WL 1862446, at *10 (D. Ariz. May 10, 2021) (allegation plaintiff suffered "lack of privacy" due to data breach does not "constitute[] sufficient injury-in-fact to confer standing").

Benefit of bargain: Plaintiffs also allege they were deprived of the "benefit of their bargain in choosing organizations promising data protection" and paying "for secure and responsible handling of their Private Information but receiving substantially less in return." Compl. ¶¶ 153(c), 157. But Plaintiffs paid for insurance, *see, e.g.*, Compl. ¶ 162, and they do not allege the Incident affected the insurance they purchased. *See Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1089 (2015) (no standing based on benefit-of-the-bargain argument where plaintiff failed to allege healthcare and insurance coverage was impacted by data breach).

Notification delay: "Delay of notification is insufficient to establish injury-in-fact" absent allegations the plaintiffs "suffered any incremental harm **because of the delay.**" *Greenstein*, 585 F. Supp. 3d at 1231, 1232 (emphasis added); *Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *9 (N.D. Cal. May 10, 2018) (Plaintiff "did not plead injury related to the delay; delay alone is not enough"). Plaintiffs allege a "nearly three-month" delay in receiving notice that "caused additional harm," Compl. ¶ 160, but fail to identify any actual incremental harm.

Dark web publication: Plaintiffs' allegations that their information may appear on the dark web cannot be connected to the Incident because it was already exposed through prior incidents. Robinson Decl. ¶¶ 7-8.[4]

### C. Plaintiffs' Common-Law Claims Must be Dismissed for Failure to Allege the State Law that Governs.

Plaintiffs assert eight common-law causes of action (Counts I-VII, X) but not which state's law governs. This alone warrants dismissal because "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *Wright v. Smart ERP Sols., Inc.*, 2026 WL 523684, at *2 (N.D. Cal. Feb. 25, 2026) (dismissing common-law claims for failure to allege applicable state law); *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *7 (C.D. Cal. May 18, 2021) (same); *Harris v. LSP Products Group, Inc.*, 2021 WL 2682045, at *15 (E.D. Cal. June 30, 2021) (dismissing common-law claims asserted by nationwide class because "Plaintiff fails to identify which states' laws apply"); *Kavehrad v. Vizio, Inc.*, 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022) (same).

---

[4] Plaintiffs also lack standing to seek injunctive relief regarding security measures, Compl. ¶ 404, because their information has allegedly already been exposed and there is no threat of repetition. *Greenstein*, 585 F. Supp. 3d at 1232 ("Although Plaintiffs request injunctive relief, that relief would have little impact" on already disclosed information.).

### D. Plaintiffs' Common-Law Claims Fail.[5]

#### 1. Plaintiffs' Negligence Claim Fails under the Economic Loss Doctrine.

As this Court has recognized, "plaintiffs may recover in tort for physical injury to person or property, but not for 'purely economic losses that may be recovered in a contract action.'" *Widjaja v. JPMorgan Chase Bank, N.A.*, 2019 WL 8108716 (C.D. Cal. Nov. 19, 2019) (Fitzgerald, J.) (dismissing negligence claim for unauthorized charge on plaintiff's account due to contractual relationship). "Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort." *Virgin Scent, Inc. v. BT Supplies W., Inc.*, 615 F. Supp. 3d 1118, 1136 (C.D. Cal. 2022).

Plaintiffs' alleged harms arise from their express contractual relationship with Farmers. They provided their personal information to Farmers in purchasing their insurance policies. *See, e.g.*, Compl. ¶ 162. These policies expressly incorporate Farmers Privacy Policy, meaning the parties' relationship—including how personal information is maintained—is the subject of express contracts between them. Witkowski Decl. Exs. 1-29.

Plaintiffs therefore cannot recover economic damages through a negligence theory—yet they allege only economic harms unaccompanied by physical injury or property damage, such as time and money spent on mitigation, lost value of personal information, unauthorized charges, and loss of the benefit of their bargain in their insurance policies. *See infra* § III.B. Plaintiffs' conclusory allegations of emotional distress are not cognizable harms under a negligence theory. *See, e.g.*, *Miranda v. Field Asset Servs.*, 2013 WL 3283701, at *5 (S.D. Cal. June 27, 2013) (citation omitted) ("[R]ecovery for emotional distress in negligence cases is not available

---

[5] Without conceding applicability, Farmers focuses on the state laws of Plaintiffs' alleged subclasses. Compl. ¶¶ 318-22. As described *infra*, the common-law claims vary across jurisdictions, underscoring the need to allege the state law that governs.

'unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance, can be shown.'").

**2. Plaintiffs Do Not Adequately Allege Damages.**

A negligence claim requires a plaintiff to establish actual and non-speculative damages resulting from the breach. *See, e.g.*, *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (2003); *Morales*, 2025 WL 1096396, at *4 (requiring damages for negligence under California law). This bar is higher than the pleading standard for Article III standing. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (noting "[w]hile Plaintiffs have currently alleged enough to assert Article III standing to sue based on an increased risk of future harm, the Court finds such allegations insufficient to sustain a negligence claim under California law.").

For this reason, "the mere danger of future harm, unaccompanied by present damage, will not support a negligence action." *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021) (citation omitted); *see also Holly v. Alta Newport Hosp.*, Inc., 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) ("bare allegation of increased risk of identity theft" "too speculative to satisfy the pleading requirement to show actual damages").

Plaintiffs, accordingly, cannot sustain their negligence claim through their potential-future-harm theory, and Plaintiffs' alleged present harms fail on causation and adequacy grounds for the same reasons they lack standing. *See supra* § III.B.

**3. Plaintiffs Cannot Assert Negligence Per Se Claim.**

California, Michigan, Texas, Nebraska, and Pennsylvania do not recognize negligence per se as an independent cause of action. *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1285 (2006) ("[T]o apply negligence per se is not to state an independent cause of action."); *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011) (same under Michigan law); *Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. App. 2015) (same under Texas law); *Kovalev v. Lidl US, LLC*, 647 F. Supp.

3d 319, 346 (E.D. Pa. 2022) (same under Pennsylvania law); *Scheele v. Rains*, 292 Neb. 974, 982 (2016) (under Nebraska law, "violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the other evidence in the case.").

#### 4. Plaintiffs Fail to Allege Breach of Fiduciary Duty Because an Insurer is Not an Insured's Fiduciary.

There is no fiduciary relationship between Farmers and Plaintiffs simply because Farmers received information from Plaintiffs for their insurance policies. Compl. ¶¶ 366, 368; *see In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145-46 (C.D. Cal. 2021) (dismissing claim in data-breach case where "Plaintiffs simply allege that Defendants collected Plaintiffs' private information so Defendants could provide their genetic testing to screen for and diagnose diseases."). Under California, Texas, Nebraska, and Michigan law "[t]he insurer-insured relationship is not a … 'fiduciary relationship.'" *Butler v. Clarendon Am. Ins. Co.*, 317 F. App'x 648, 651 (9th Cir. 2009); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex. App. 2003) (same under Texas law); *Am. Driver Serv., Inc. v. Truck Ins. Exch.*, 631 N.W.2d 140, 148 (Neb. 2001) (same under Nebraska law); *Villaflor v. State Farm. Mut. Auto. Ins. Co.*, 2011 WL 13161246, at *2 n. 2 (E.D. Mich. Mar. 29, 2011) (same under Michigan law).

#### 5. Plaintiffs Fail to Allege Breach of Confidence Because it is Not a Cause of Action or Otherwise Requires an Affirmative Disclosure.

New Jersey and Texas law do not recognize breach of confidence. *In re Am. Fin. Resources, Inc. Data Breach Litig.*, 2023 WL 3963804, at *7 (D.N.J. Mar. 29, 2023) (Plaintiffs "unable to rebut Defendant's argument that such a [breach of confidence] claim does not exist[] in New Jersey"); *Logan v. Marker Grp., Inc.*, 2024 WL 3489208, at *11 (S.D. Tex. July 18, 2024) (similar under Texas law). To the extent those states' laws apply, Count X fails.

Regardless, courts routinely dismiss breach-of-confidence claims in data-breach cases because "Plaintiffs must allege affirmative action on the part of the discloser." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 8540911, at *5, 6 (D.N.J. May 5, 2023) (allegations "insufficient to plead breach on confidence under any state's law" where plaintiffs allege "an unauthorized disclosure occurred because Defendants failed to implement and maintain reasonable safeguards"). Plaintiffs here allege only that unauthorized parties gained access to certain information, not an affirmative disclosure. Compl. ¶¶ 163, 181-82, 201, 221, 241, 258, 277, 296.

**6. Plaintiffs Fail to Allege Invasion of Privacy Because They Cannot Allege Farmers Intentionally Intruded on Their Privacy.**

Plaintiffs cannot allege invasion of privacy under the common law or California Constitution (Counts VI and XIV) because these claims require Farmers to intentionally intrude upon Plaintiffs' privacy. Courts therefore routinely dismiss such claims in data breaches involving unauthorized access by a third party. *See, e.g.*, *In re Am. Med. Collection Agency*, 2023 WL 8540911, at *6 (cleaned up) (dismissing invasion of privacy claim and noting "the intrusion, as well as the action, must be intentional"); *Smith*, 2017 WL 11678765, at *6 (dismissing constitutional privacy claim and noting "courts reject invasion of privacy claims absent facts demonstrating an intentional (as opposed to negligent) violation of privacy").

**7. Plaintiffs Cannot Allege Breach of Implied Contract Because Their Insurance Policies are Express Contracts with Farmers.**

Plaintiffs entered into contracts with Farmers when they purchased their insurance policies, which govern the use of their personal information and this dispute.[6] Now, Plaintiffs ignore these contracts and allege that—"[i]n connection with their business relationship," they entered into implied contracts with Defendants. Compl.

---

[6] All Plaintiffs' insurance policies incorporate Farmers Privacy Policy. *See* Witkowski Decl. ¶¶ 2-28.

¶¶ 354-55. But where an express contract governs a dispute, a plaintiff cannot assert implied contract. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (Under California law, "an action based on an implied-in-fact contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.") (cleaned up); *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 722 (E.D. Mich. 2005) (same under Michigan law); *SCP Distributors, LLC v. Nicholas Pools Inc.*, 2023 WL 6130635, at *5 (D.N.J. Sept. 19, 2023) (same under New Jersey law); *King v. Baylor Univ.*, 46 F.4th 344, 365 (5th Cir. 2022) (same under Texas law); *Alexander v. Progressive Advanced Ins. Co.*, 2024 WL 3106185, at *3 (E.D. Pa. June 24, 2024) (same under Pennsylvania law).

Further, Plaintiffs fail to allege the existence of an implied contract, including by specifying which Farmers entity is the counter-party to the alleged contract or what either party did to indicate intent to contract. *See, e.g.*, *Mapsong PC v. Blue Shield of Calif. Life and Health Ins. Co.*, 780 F. Supp. 3d 939, 943 (2024) ("An implied-in-fact contract is 'an agreement, the existence and terms of which are manifested by conduct.'").

**8. Plaintiffs Cannot Sustain a Duplicative Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Texas does not recognize an implied covenant of good faith and fair dealing. *See Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) ("Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances."). As to the other states, the claim fails because it is duplicative of the implied contract claim. *See, e.g.*, *Musk v. OpenAI, Inc.*, 795 F. Supp. 3d 1179, 1189 (N.D. Cal. 2025) (dismissing covenant claim because it "fail[s] to allege conduct distinct from the actions which form the bases of the surviving implied breach of contract claim").

Here, Plaintiffs allege Farmers breached the implied covenant by "failing to safeguard" and "ensure the confidentiality" of their information, "failing to comply

with industry standards" and "legal obligations," and not providing prompt notice. Compl. ¶ 382. This is the same conduct Plaintiffs allege to support their implied-contract claim: Farmers had "obligation to take reasonable steps to secure and safeguard Plaintiffs' and Class Members' Personal Information" and "implement and maintain reasonable security measures." Compl. ¶¶ 358-59.

**9. Plaintiffs Fail to Allege Unjust Enrichment.**

"[A]n unjust enrichment claim 'cannot lie' where a valid express contract governs the same subject matter," even where no breach-of-contract claim is alleged. *Milan v. JPMorgan Chase Bank, N.A.*, 2025 WL 3295323, at *8 (C.D. Cal. Nov. 26, 2025) (dismissing under California law); *see also, e.g., Donahue v. Fed. Nat'l Morg. Ass'n*, 2014 WL 1305017, at *8 (E.D. Mich. Mar. 31, 2014) (same under Michigan law); *Livingstone v. Haddon Points Manager, LLC*, 2020 WL 902218, at *9 (D.N.J. Feb. 25, 2020) (same under New Jersey law); *Century Indem. Co. v. URS Corp.*, 2009 WL 2446990, at *5 (E.D. Pa. Aug. 7, 2009) (same under Pennsylvania law). The insurance policies are express contracts between Plaintiffs and Farmers. Plaintiffs allege Farmers benefited from fees and information they provided in exchange for "services"—*i.e.*, their insurance policies. *See* Compl. ¶¶ 32, 395. Plaintiffs therefore allege that Farmers retained a benefit pursuant to the parties' express contracts and cannot maintain an unjust enrichment claim.

Further, Plaintiffs do not allege that, as a result of the Incident, they failed to receive their insurance policies. *See, e.g., Mahoney v. Fidelity Nat'l Title Co.*, 2008 WL 4286934 (C.D. Cal. Sept. 15, 2008) (no unjust enrichment where defendant received payment because "Plaintiff got exactly the exchange which he expected: a title insurance policy in exchange for the agreed-upon price."). Plaintiffs also fail to plead how Farmers received any cognizable benefit from the collection of their information, defeating their claim for unjust enrichment. *See, e.g., In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 279 (E.D. Pa. 2024) (dismissing

claim "plaintiffs have failed to plead how [defendant] actually benefitted from possessing their PII." (citation omitted)).

### E. Plaintiffs Fail to Allege a DPPA Claim.

Plaintiffs must establish (1) Farmers **knowingly** obtained or disclosed information, (2) from a motor vehicle record, and (3) for a non-permissible use. 18 U.S.C. § 2724. "[W]here … the initial source of personal information is a record in the possession of an individual, rather than a state DMV, then use or disclosure of that information does not violate the DPPA." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019).

#### 1. Plaintiffs Cannot Allege a Knowing Disclosure.

Plaintiffs fail to allege a knowing disclosure when, as here, a third party creates an unauthorized data disclosure. "A 'knowing disclosure'" under the DPPA requires "some voluntary action to disclose the information." *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015). Allegations of information stolen by bad actors are insufficient. *See id.* (dismissing DPPA claim because no knowing disclosure); *see also Allen v. Vertafore, Inc.*, 2021 WL 3148870, at *3 (S.D. Tex. June 14, 2021) (dismissing DPPA claim because no "factual allegation describing how [Vertafore's] purported mismanagement of information amounts to a knowing disclosure of personal information for an improper purpose"), *recommendation adopted*, 2021 WL 3144469 (S.D. Tex. July 23, 2021); *McDonough v. Anoka Cnty.*, 799 F.3d 931, 957 (8th Cir. 2015) (dismissing DPPA claim where the "allegations, at most, allege negligence or recklessness" rather than knowing disclosure); *Johnson v. Cornerstone Nat'l Ins. Co.*, 2024 WL 5265372 (W.D. Mo. Apr. 29, 2024) (dismissing DPPA claim where "Defendants did not voluntarily give hackers access to Cornerstone's system, nor did they voluntarily make Plaintiffs' information (or access to the system) available to the public").

Likewise, allegations regarding purported inadequate security measures do not establish a *knowing* disclosure. *See Enslin*, 136 F. Supp. 3d at 671 ("privately holding

PDI, even in an unsecured manner, does not constitute a 'voluntary disclosure' under the DPPA"); *Allen*, 2021 WL 3148870, at *3 ("purported mismanagement of information" did not amount "to a knowing disclosure of personal information for an improper purpose" under the DPPA); *In re NCB Mgmt. Servs.*, 748 F. Supp. 3d 262, 280 (E.D. Pa. 2024) (dismissing DPPA claim for lack of knowing disclosure where "[t]he crux of plaintiffs' allegations against NCB is that it failed to install adequate security measures to protect against theft of plaintiffs' PII ...."). Here, Plaintiffs do not allege Farmers took any voluntary action to disclose Plaintiffs' DLNs. Instead, unauthorized third parties stole the information through a Farmers vendor without Farmers consent. Compl. ¶ 46.

#### 2. Plaintiffs Do Not Allege Their Information Came from a Motor Vehicle Record.

The DPPA is "intended to prohibit only the disclosure or redisclosure of information *originating* from state department of motor vehicles ('DMV') records"—there is no DPPA claim if the DLNs come from the plaintiffs. *Siegler v. Best Buy Co. of Minn., Inc.*, 519 F. App'x 604, 605 (11th Cir. 2013); *see also Ocasio v. Riverbay Corp.*, 2007 WL 1771770, at *1 (S.D.N.Y. June 19, 2007) (dismissing DPPA claim where plaintiff provided his PII to defendant); *Kresal v. Secura Ins. Holdings, Inc.*, 2018 WL 2899694, at *4 (W.D. Wisc. June 11, 2018) (same). Here, Plaintiffs affirmatively allege *they* provided their personal information to Farmers. Compl. ¶ 118.

### F. Plaintiffs Fail to Allege State Statutory Causes of Action.

#### 1. Plaintiffs Have an Adequate Remedy at Law.

Plaintiffs' equitable claims must be dismissed because they have an adequate legal remedy. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3–4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable."). The Complaint is replete with

allegations of adequate remedies at law. Compl. ¶¶ 343, 351, 361, 375, 417, 442, 473, 481, 493, 501, 511, 522 (seeking damages under negligence and contract theories, DPPA, and state statutes), Prayer (requesting "actual, compensatory, and/or statutory damages, and punitive damages"). Accordingly, Plaintiffs may not seek equitable relief under the state statutory claims (Counts XII-XIII, XV-XVI, XVIII- XXI).

Plaintiffs' claims under the UCL[7], California Constitution, and NUDTPA must also be dismissed because these statutes permit only equitable relief. *See, e.g.*, *Mossazadeh v. Monahan Prods., LLC*, 2026 WL 413739, at *4 (C.D. Cal. Jan. 14, 2026) (dismissing UCL claim and stating "plaintiff must allege some facts suggesting that damages are insufficient to make them whole when seeking equitable relief"); *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 113 (2007) ("By its own terms, [NUDTPA] § 87–303(a) provides only for equitable relief consistent with general principles of equity" and "does not provide a private right of action for damages."); *Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (Constitution's privacy protection supports action for injunction but not "private right of action for damages").

Elsewhere, Plaintiffs allege "if a second breach occurs," they will lack an adequate legal remedy because unspecified "resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct." Compl. ¶ 406; *see also id.* ¶ 463 (alleging "monetary damages will not end the invasion of privacy"). But this argument—designed to dodge *Sonner* and its progeny—fails. A speculative potential future incident does not change that Plaintiffs currently admit they have an adequate legal remedy. *See also Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (dismissing equitable claims

---

[7] Plaintiffs also lack statutory standing under the UCL because they do not adequally allege cognizable damages. *See supra* § III.B. *In re ZF-TRW Airbag Control Units Products Liab. Litig.*, 601 F. Supp. 3d 625, 763 (C.D. Cal. 2022) (UCL requires a party to "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*" caused by the unfair conduct).

and "[a]s to potential future breaches, Plaintiff offers no explanation why monetary damages would not provide adequate relief").

### 2. Plaintiffs Fail to Plead Any Consumer-Protection Statute Claims.

Plaintiffs fail to allege any fraud-based or unfair conduct under the various consumer-protection statutes—the UCL, MCPA, NCPA, NJCFA, PUTPCPL, and TCPA.

For fraud-based claims, Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard, which "requires that all averments of fraud must be made with particularity." *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016). A plaintiff must allege, with particularity, the "who, what, when, where, and how" of the allegedly fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

All the state consumer-protection claims sound in fraud. Compl. ¶ 434 ("failure to disclose information" and "a fraudulent act or practice" under UCL), ¶¶ 467-68 (omissions or misrepresentations regarding Farmers security, and security failures, under Michigan Consumer Protection Act), ¶ 477 (same under NCPA), ¶¶ 506-07 (same under NJCFA), ¶¶ 515-16 (same under PUTPCPL), ¶¶ 527-28 (same under TCPA). Accordingly, Plaintiffs' omission and misrepresentation theories are subject to Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Smith*, 2017 WL 11678765, at *6 (Rule 9(b) applies to UCL claim sounding in fraud); *Bret Binder v. Westar Mortg., Inc.*, 2016 WL 3762710, at *15 (E.D. Pa. July 13, 2016) (same under PUTPCPL); *Chen v. Hillsdale Coll.*, 2024 WL 6821096, at *12 (W.D. Mich. Sept. 13, 2024) (same for MCPA); *Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*, 346 F. Supp. 3d 880, 888 (N.D. Tex. 2018) (same under TCPA); *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 381 (D.N.J. 2024) (same for NJCFA); *Cal Creations, LLC v. Barbato*, 2025 WL 2896937, at *18 (D. Neb. Oct. 10, 2025) (same under NCPA).

Here, the crux of Plaintiffs' theory is that Farmers made false representations about its security, inducing them to provide their personal information in exchange for insurance. Compl. ¶¶ 434, 468, 477, 506, 516, 528. But Plaintiffs do not allege the

specific statements Farmers made or when or how the alleged misrepresentation or omission occurred. *See id.* ¶ 434 ("assurances" to "adequately protect" PII), ¶ 468 (misrepresented protection of PII and compliance with security duties), ¶ 477 (same), ¶ 506 (same), ¶ 516 (same), ¶ 528 (same). Likewise, Plaintiffs do not allege Farmers acted with intent to deceive when it sold them insurance. *See, e.g.*, *Angus v. Flagstar Bank, FSB*, 2025 WL 937760, at *4, 6 (E.D. Mich. Mar. 27, 2025) (dismissing NJCFA and MCPA claims for failure to allege fraudulent intent at time of transaction). Counts XI, XV-XVI, XIX-XXI must be dismissed to the extent they rely on conclusory misrepresentation and omission theories.

To the extent Plaintiffs allege unfair conduct under the UCL, MCPA, NCPA, NJCFA, PUTPCPL, and TCPA, these allegations also fail. Compl. ¶¶ 434, 468, 477, 506, 516, 528. Plaintiffs do not allege any purported security failures **in connection with** the sale of their insurance policies. Plaintiffs also do not allege there was any "unfair" conduct which induced their insurance policy purchases. *See, e.g.*, *Angus*, 2025 WL 937760, at *4 (dismissing NJCFA claim in data-breach case because defendant's alleged failure to safeguard PII occurred after plaintiff chose to transact with and entrust PII to defendant). Rather, Plaintiffs allege Farmers alleged security failures occurred *after* the purchase of their insurance policies. *See* Compl. ¶¶ 157.

### 3. Plaintiff Harris Does Not Allege a Claim Under the CCPA.

To recover damages under the CCPA, "consumers must first provide 30-days' written notice to the business from which they are trying to collect statutory damages before initiating litigation." *Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022); Cal. Civ. Code § 1798.150(b) (requiring 30-day notice). "[I]f within the 30 days the business actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against the business." Cal. Civ. Code §

1798.150(b). Harris's CCPA claim fails because she did not provide timely notice under the CCPA and Farmers informed Harris it cured any purported violations.

Courts have dismissed CCPA claims where a plaintiff has failed to adhere to the notice requirement. *See Griffey*, 2022 WL 1811165, at *6 (dismissing claim because notice not filed 30 days before complaint). Harris sent CCPA notices to FGI and FNWL on April 20, 2026. DeGroot Decl. Exs. A-B. The Complaint, filed only 11 days later, was the first time Plaintiff Harris asserted a CCPA claim. Harris's letters to FGI and FNWL were therefore untimely and Harris did not send CCPA notices to FIE, Truck, or Fire. The CCPA claim should be dismissed to the extent Harris seeks to recover statutory damages. Compl. ¶ 442. Though Plaintiffs refer to an unspecified "notice" from September 2025, *id.* ¶ 441, Plaintiffs do not (and cannot) allege it came from Harris.

Regardless, Farmers cured Harris's claimed violations. On May 29, 2026, Farmers responded to Harris's notice with a letter confirming Farmers "worked diligently to identify the cause of the incident and mitigate any potential harms." DeGroot Decl. Ex. C. Farmers explained that "[n]o further similar incidents have occurred, nor will any CCPA violations occur going forward because Defendants have previously and do now maintain rigorous and appropriate cybersecurity measures and vendor supervision." *Id.* Farmers described how any violations causing the Incident were cured, which nullifies a CCPA claim. *See In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *26 (D. Mass. July 31, 2025) (dismissing CCPA claim when defendants "stated in their [cure] letter that [defendant] had implemented [breached entity's] patches").

**4. Harris Fails to Allege Cognizable Harm under the CCRA.**

A CCRA claim requires that a plaintiff allege "incremental harm suffered as a result of the alleged delay in notification." *Dugas v. Starwood Hotels & Resorts WorldWide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016). The "delay[] in notifying" must cause the alleged harm. *See id.* at *6-7. Plaintiffs allege Farmers

"waited" approximately three months following the Incident. Compl. ¶¶ 2, 447. But Harris fails to plead any resulting harm. All Harris alleges is that "[b]ecause Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice." *Id.* ¶ 449. The Complaint fails to explain these purported damages or their connection to alleged notification delay, let alone their connection to the Incident in light of prior exposures.

**5. Scorio Fails to Allege a New Jersey Disclosure Act Claim.**

The Act requires businesses to provide notice of data breaches to potentially impacted customers, N.J. Stat. Ann. § 56:8-163, but does not provide a private right of action—and thus must be dismissed. *See Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1332 (N.D. Ga. 2024) ("CSBDA does not expressly provide a private right of action."); *Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017) (same).

**G. There is No Standalone Claim for Declaratory and Injunctive Relief.**

Plaintiffs' claim for declaratory and injunctive relief is not a standalone cause of action and must be dismissed. *Lenhoff Enterprises, Inc. v. United Talent Agency, Inc.*, 2015 WL 7008185, at *7 (C.D. Cal. Sept. 18, 2015) ("Plaintiff's request for declaratory relief is duplicative because it seeks to determine the same issues as its other claims" and "injunctive relief is not an independent cause of action"); *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1037 (C.D. Cal. 2024) ("plaintiffs may not bring standalone claims for declaratory relief").

## IV. CONCLUSION

For these reasons, Farmers respectfully requests the Complaint be dismissed.

Dated: June 18, 2026

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
Isabelle Ord
Attorney for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

**Certificate of Compliance**

Pursuant to Local Rule 11-6.2, the undersigned, counsel of record for Defendants Farmers Insurance Exchange, Farmers Group Inc., Farmers New World Life Insurance Company, Truck Insurance Exchange, and Fire Insurance Exchange certifies that this brief contains 6,856 words, which complies with the word limit of Local Rule 11-6.1.

Dated: June 18, 2026

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
Isabelle Ord
Attorney for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE