ISABELLE ORD (SBN 198224)
ANDREW SERWIN (SBN 179493)
MATTHEW DANAHER (SBN 351055)
isabelle.ord@us.dlapiper.com
andrew.serwin@us.dlapiper.com
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

JEFFREY DEGROOT (*pro hac vice*)
jeffrey.degroot@us.dlapiper.com
VIRGINIA WEEKS (*pro hac vice*)
virginia.weeks@us.dlapiper.com
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4800
Facsimile: 206.839.4801

Attorneys for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| *In re Farmers Security Incident Litigation*<br><br>This Document Relates to: All Actions | Case No. 2:25-cv-07972-MWF(AYPx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: Oct. 19, 2026<br>Time: 10:00 a.m. via Zoom<br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

## TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 8

II. PLAINTIFFS LACK ARTICLE III STANDING .......... 9

A. Plaintiffs' allegations of misuse of information do not create standing. .......... 9

1. Plaintiffs do not allege a plausible link between the Incident and the fraudulent financial activity. .......... 9

2. McGlynn cannot create standing by alleging information on the dark web. .......... 11

3. Scorio does not allege any connection between increased spam and the Incident. .......... 11

B. Plaintiffs' future-risk-of-harm theory fails. .......... 12

C. Plaintiffs do not allege any other basis for standing. .......... 14

III. PLAINTIFFS FAIL TO ALLEGE ANY STATUTORY CLAIMS. .......... 17

A. Plaintiffs concede the Complaint fails to allege the law governing the common-law claims. .......... 17

B. Plaintiffs' non-California statutory claims must be dismissed if California law governs. .......... 18

C. Plaintiffs' statutory consumer-protection claims also fail to allege fraudulent or unfair conduct. .......... 18

D. Plaintiff Harris fails to allege California claims under the CCPA, UCL, CCRA, and California Constitution. .......... 19

E. Plaintiffs allege an adequate remedy at law. .......... 21

IV. PLAINTIFFS' COMMON-LAW CLAIMS FAIL. .......... 22

A. Plaintiffs fail to plead negligence. .......... 22

1. The economic loss doctrine bars Plaintiffs' claim. .......... 22

2. Plaintiffs do not allege damages. .......... 25

B. Plaintiffs cannot maintain a breach of confidence claim. .......... 26

C. Plaintiffs' express contracts also preclude their implied contract and unjust enrichment claims. .......... 26

D. Plaintiffs' allegations preclude an invasion of privacy claim. .......... 27

V. CONCLUSION .......... 27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abellard v. Stretto, Inc.*,
2025 WL 1674265 (C.D. Cal. Apr. 25, 2025) .......... 11, 15

*In re Accellion*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 25

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......... 13

*ADT LLC v. Vision Sec., LLC*,
2014 WL 3764152 (S.D. Fla. July 30, 2014) .......... 18

*In re Ambry Genetics Data Breach Litig.*,
2021 WL 2935303 (C.D. Cal. Apr. 7, 2021) .......... 10, 22, 27

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 22

*Andersen v. Oak View Grp., LLC*,
2024 WL 5426654 (C.D. Cal. Nov. 22, 2024) .......... 10

*Angus v. Flagstar Bank, FSB*,
2025 WL 937760 (E.D. Mich. Mar. 27, 2025) .......... 19

*Antman v. Uber Techs., Inc.*,
No. 3:15-cv-01175-LB, 2018 WL 2151231, at *2, *10-11 (N.D. Cal. May 10, 2018) .......... 13

*Antman v. Uber Techs., Inc.*,
2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .......... 12, 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 20

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) .......... 10

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) .......... 26

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) .......... 24

*Bulldog New York LLC v. Pepsico, Inc.*,
8 F. Supp. 3d 152 (D. Conn. 2014) .......... 18

*In re Capital One Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ........ 19

*Cassandra Webb v. Puffy LLC*,
2025 WL 5085526 (C.D. Cal. Dec. 2, 2025) ........ 22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 11

*Clark v. Am. Honda Motor Co., Inc.*,
528 F. Supp. 3d 1108 (C.D. Cal. 2021) ........ 22

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
2025 WL 2393024 (D. Nev. Aug. 15, 2025) ........ 24

*In re Episource LLC Data Breach Litig.*,
2026 WL 2111881 (C.D. Cal. July 13, 2026) ........ 24

*In re Experian Data Breach Litig.*,
2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ........ 25

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 16, 27

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (2015) ........ 16

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
2024 WL 5659583 (E.D. Mich. Sept. 30, 2024) ........ 10, 11

*Florence v. Order Express, Inc.*,
674 F. Supp. 3d 472 (N.D. Ill. 2023) ........ 20

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) ........ 22

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........ 10

*Greenstein v. Noblr Reciprocal Exch.*,
2022 WL 17418972 (N.D. Cal. Dec. 5, 2022) ........ 11, 13

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........ 12, 13, 14, 15

*Griffey v. Magellan Health Inc.*,
2022 WL 1811165 (D. Ariz. June 2, 2022) ........ 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 26

*Heinz v. Amazon.com Inc.*,
2024 WL 2091108 (W.D. Wash. May 8, 2024) .................................................. 18

*Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) .......................................... 25

*In re Illuminate Educ. Data Sec. Incident Litig.*,
2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) .................................................. 11

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
2022 WL 16894503 (C.D. Cal. July 29, 2022) .................................................. 20

*Krantz v. Old Cooper Company, Inc.*,
2026 WL 1850034 (C.D. Cal. Apr. 28, 2026) .................................................. 21

*Lipman Bros. v. Apprise Software, Inc.*,
2015 WL 4476983 (E.D. Pa. July 22, 2015) .................................................. 18

*Llerandi v. Caliber Home Loans, Inc.*,
2019 WL 6655399 (C.D. Cal. June 26, 2019) .................................................. 12, 21

*Milan v. JPMorgan Chase Bank, N.A.*,
2025 WL 3295323 (C.D. Cal. Nov. 26, 2025) .................................................. 26

*Morales v. Conifer Revenue Cycle Sols., LLC*,
2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) .................................................. 23

*Moser v. Health Care Servs. Corp.*,
2026 WL 1625351 (C.D. Cal. June 1, 2026) .................................................. 17

*In re MOVEit Customer Data Sec. Breach Litig.*,
2025 WL 2179475 (D. Mass. July 31, 2025) .................................................. 20

*Nero AG v. MPEG LA, L.L.C.*,
2010 WL 4366448 (C.D. Cal. Sept. 14, 2010) .................................................. 10

*Owens v. Smith, Gambrell and Russell Int'l, LLP*,
2024 WL 3914663 .................................................. 13

*Patterson v. Medical Review Inst. Of Am., LLC*,
2022 WL 2267673 (N.D. Cal. June 23, 2022) .................................................. 15

*Peralta v. Certified Emp. Screening Inc.*,
2025 WL 1723142, at *6 (C.D. Cal. May 7, 2025) .................................................. 25

*Polkowski v. Jack Doheny Companies, Inc.*,
2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) .................................................. 10, 11

*Resnick v. Hyundai Motor Am., Inc.*,
2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) .................................................. 24

*Rodriguez v. Just Brands USA, Inc.*,
2021 WL 1985031 (C.D. Cal. May 18, 2021) .......... 17

*Schneider v. Cal. Dep't of Corrs.*,
151 F.3d 1194 (9th Cir. 1998) .......... 17

*Scifo v. Alvaria, Inc.*,
2024 WL 4252694 (D. Mass. Sept. 20, 2024) .......... 10

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
2024 WL 1091195, at *6 (N.D. Cal. Feb. 22, 2024) .......... 27

*Smith v. Sabre Corp.*,
2017 WL 11678765 (C.D. Cal. Oct. 23, 2017) .......... 21

*In re Snowflake, Inc., Data Sec. Breach Litig.*,
2025 WL 3012889 (D. Mont. Oct. 28, 2025) .......... 19, 24

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 21, 25

*Spokeo v. Robins*,
578 U.S. 330 (2016) .......... 17

*Stallone v. Farmers Group, Inc.*,
2022 WL 10091489 (D. Nev. Oct. 15, 2022) .......... 13, 14, 17

*Stasi v. Inmediata Health Grp. Corp*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 16, 23

*In re Uber Techs, Inc. v. Data Sec. Breach Litig.*,
2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) .......... 12, 16

*Widjaja v. JPMorgan Chase Bank, N.A.*,
2019 WL 8108716 (C.D. Cal. Nov. 19, 2019) .......... 22

*In re Yahoo! Inc.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 15, 21

*In re Zappos.com*,
888 F.3d 1020 (9th Cir. 2018) .......... 14

**Statutes**

Connecticut Uniform Trade Secrets Act .......... 18

Driver's Privacy Protection Act .......... 9

Florida Deceptive & Unfair Trade Practices Act .......... 18

Michigan Consumer Protection Act .......... 18

Nebraska Consumer Protection Act .......... 18

Nebraska Uniform Deceptive Trade Practices Act ................ 18
New Jersey Consumer Fraud Act ................ 18
New Jersey Customer Security Breach Disclosure Act ................ 18
Pennsylvania Unfair Trade Practices and Consumer Protection Law ................ 18
Texas Deceptive Trade Practices-Consumer Protection Act ................ 18

**Other Authorities**

Cal. Rules of Court, rule 1.201(a)(1) ................ 12
California Constitution ................ 19, 21
Fed. R. Civ. P. 5.2(a)(1) ................ 12
Fed. R. Civ. P. 9(b) ................ 19
Fed. R. Civ. P. 12(b)(6) ................ 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Complaint must be dismissed because Plaintiffs lack Article III standing. Plaintiffs' injury-in-fact allegations are implausible. Plaintiffs allege "actual misuse" related to financial fraud, but the exposed non-sensitive information could not have caused this financial fraud. Moreover, Plaintiffs do not contest that their full SSNs were already on the dark web before the Incident. When financial fraud occurs, and the information needed to commit that fraud is already available, it is not plausible that the later exposure of *non-sensitive information* is somehow the cause. Without credible allegations of actual misuse, Plaintiffs are left only with the argument that exposure of DLNs will cause future harm, but courts in the Ninth Circuit have repeatedly held that DLN exposure does not meet this high standard.

Even if Plaintiffs did have standing, their causes of action are not supported by the pleaded facts.

First, Plaintiffs do not adequately allege their statutory claims. Plaintiffs now claim, for the first time in their Opposition, that California law governs their claims. But Plaintiffs cannot amend their Complaint by changing their position in the Opposition. As pleaded, the Complaint fails to identify the allegedly applicable law, and must be dismissed on this ground. This pleading deficiency also reveals additional defects in the Complaint. If California law applies, then Plaintiffs' non-California statutory claims are unfounded, and cannot proceed. The remaining California statutory claims also fail because they do not fit the alleged facts or because Plaintiffs allege adequate legal remedies and therefore cannot seek equitable relief.

Second, Plaintiffs' common-law claims fare no better. Plaintiffs do not contest they entered into insurance contracts with Farmers—which incorporate Farmers privacy notice regarding handling of Plaintiffs' information. Because this dispute is subject to express contracts, Plaintiffs' negligence, unjust enrichment, implied contract, and breach of confidence claims all fail. And, Plaintiffs' common-law

invasion of privacy claim also fails because Plaintiffs have not alleged Farmers *intentionally* intruded on their privacy.

Faced with Farmers dismissal motion, and these realities, Plaintiffs have already agreed that four of their causes of action should be dismissed.[1] Farmers respectfully requests the Court to dismiss the remaining claims.

## II. PLAINTIFFS LACK ARTICLE III STANDING

### A. Plaintiffs' allegations of misuse of information do not create standing.

Plaintiffs' standing argument relies on alleged misuse of information for three of the eight Plaintiffs. Opp. at 4-5. Plaintiffs allege (1) criminals stole Harris's information "to open a fraudulent credit-card account and incur a fraudulent $300 charge," (2) Scorio experienced "$100 in fraudulent bank charges," (3) McGlynn's information "was posted to the dark web," and (4) Scorio alleges "a spike in targeted phishing calls." *Id.* at 4. Plaintiffs fail to connect any of these alleged harms to the Incident. By failing to allege the other Plaintiffs had their information misused, Plaintiffs concede that those Plaintiffs have **not** experienced actual misuse of their information.

#### 1. Plaintiffs do not allege a plausible link between the Incident and the fraudulent financial activity.

Plaintiffs ask the Court to assume—without explanation—that the limited information exposed in the Incident (names, birthdays, DLNs, and partial SSNs) allowed bad actors to open financial accounts and make financial transactions, but this information is insufficient for financial fraud. The Court "is not required to accept as true '… [these] unwarranted deductions of fact, or unreasonable inferences'"—and numerous courts have held, as a matter of law, that there is no Article III standing when

[1] Plaintiffs agree their claims for violation of the Driver's Privacy Protection Act (Count IX), breach of fiduciary duty (Count IV), and breach of the implied covenant of good faith and fair dealing (Count V) should be dismissed. Opp. at 9 n.3. Plaintiffs further concede their negligence per se claim is not an independent cause of action under California law, *id.* at 11, warranting dismissal of Count II.

the harm allegations do not match the exposed information. *Nero AG v. MPEG LA, L.L.C.*, 2010 WL 4366448, at *4 (C.D. Cal. Sept. 14, 2010) (citing *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008)); *see also, e.g.*, *In re Ambry Genetics Data Breach Litig.,* 2021 WL 2935303, at *2 (C.D. Cal. Apr. 7, 2021) (no traceability regarding credit card charges where no allegations "credit card numbers were stolen in the breach"); *Scifo v. Alvaria, Inc.*, 2024 WL 4252694, at *4 (D. Mass. Sept. 20, 2024) (no traceability absent "explanation for how the disclosure of … loan numbers and balances, telephone numbers, mailing addresses, and the last four digits of Social Security numbers could be parried into unauthorized debit purchases").

Pursuant to these authorities, which Plaintiffs do not question, Plaintiffs fail to plead a plausible connection between alleged fraudulent activity and the Incident. But there is also the uncontested fact that Plaintiffs' **full** SSNs were already exposed on the dark web before the Incident. Robinson Decl. ¶¶ 7-8; DeGroot Decl. Ex. L at ¶¶ 6, 31, 40. Where fraudulent activity allegedly occurred—and information sufficient to commit that fraud is already available—later-exposed non-sensitive information cannot be the cause.[2] *See Polkowski v. Jack Doheny Companies, Inc.,* 2025 WL 3079358, at *7 (E.D. Mich. Nov. 4, 2025) (no traceability where defendant provided declaration establishing plaintiff's information was disclosed in previous breaches and plaintiff offered no evidence "to support his argument that his injuries are fairly traceable to the data breach"); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.,* 2024 WL 5659583, at *8 (E.D. Mich. Sept. 30, 2024) (same).

[2] Plaintiffs argue "Courts routinely hold" allegations that limited information was exposed support traceability as to "fraud and dark-web exposure," but rely on inapplicable cases. Opp. at 7. *Andersen v. Oak View Grp., LLC*, 2024 WL 5426654 (C.D. Cal. Nov. 22, 2024), involved the exposure of **full** SSNs and alleged fraudulent charges. *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024), involved the exposure of the plaintiffs' contact information and subsequent phishing attacks. In both cases—but unlike here—the information exposed was logically connected to the alleged harm.

**2. McGlynn cannot create standing by alleging information on the dark web.**

To the extent the non-sensitive information at issue here was posted on the dark web, McGlynn has not alleged a corresponding injury-in-fact. *See Greenstein v. Noblr Reciprocal Exch.*, 2022 WL 17418972, at *5 (N.D. Cal. Dec. 5, 2022) (no injury in fact following DLN exposure, despite suggestions DLNs could be on dark web). And, the presence of McGlynn's full SSN on the dark web before the incident undercuts any argument the posting of the non-sensitive information caused harm. Robinson Decl. ¶¶ 7-8. *See Polkowski*, 2025 WL 3079358, at *7 (no traceability where information disclosed in previous breaches); *In re Flagstar*, 2024 WL 5659583, at *6-7 (same).[3]

**3. Scorio does not allege any connection between increased spam and the Incident.**

Scorio has not alleged any connection between the Incident and purported phishing calls because she does not allege the exposure of her telephone number. Compl. ¶ 192. Nor has Scorio alleged an injury-in-fact due to alleged spam communications. *See In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *3 (C.D. Cal. Apr. 19, 2023) ("Receipt of spam, absent any other injury, is insufficient to establish an injury for the purposes of standing."); *see also Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *6 (C.D. Cal. Apr. 25, 2025) (same). Plaintiffs argue these cases "involved less sensitive data and no allegations of actual misuse," Opp. at 6, but the question of whether spam itself causes harm has nothing to do with those purported distinctions.

The Opposition does not argue that the other three Plaintiffs who alleged an increase in spam communications suffered any harm, and, regardless, any allegations of injury fail for the above reasons. Mot. at 22-23; Compl. ¶¶ 212, 231, 287.

---

[3] Plaintiffs argue "their information **may** appear on the dark web," but a future injury that "may" occur is speculative and not "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013).

**B. Plaintiffs' future-risk-of-harm theory fails.**

Plaintiffs do not face a credible risk of future harm. First, Plaintiffs' argument that allegations of actual misuse "demonstrate that future misuse is more likely for all Plaintiffs" is speculative. Opp. at 5. The alleged misuse, as detailed above, has no plausible connection to the Incident, and cannot support future harm.

Second, Plaintiffs do not address, and therefore concede, that the exposure of names, birthdays, and partial SSNs cannot give rise to a credible risk of future harm. *See* Mot. at 20-21; *Llerandi v. Caliber Home Loans, Inc.*, 2019 WL 6655399, at *3 (C.D. Cal. June 26, 2019) (Fitzgerald, J.) (failure to address argument "is grounds for granting the Motion [to dismiss] as to these claims"). Indeed, Plaintiffs do not question that federal and state courts permit **public filings** to include the last four digits of SSNs. Mot. at 20 (citing Fed. R. Civ. P. 5.2(a)(1) and CA Rule of Court 1.201(a)(1)).

Third, Plaintiffs do not even attempt to argue McCulloch, who had only his name and birthday exposed, has standing. Mot. at 20; Compl. ¶ 168; DeGroot Decl. Ex. D; *Llerandi*, 2019 WL 6655399, at *3 ("The Court agrees with Defendant that, to the extent Plaintiff does not address the sufficiency of either his … claims, dismissal is appropriate.").

Fourth, Plaintiffs assert disclosure of their DLNs could create a future risk of harm. Opp. at 3-4. But the standard is not whether future harm may occur, or is even likely—it must be certainly impending. Given this high bar, courts in the Ninth Circuit have repeatedly held that disclosure of DLNs does not establish standing. *See* Mot. at 20; *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227-29 (N.D. Cal. 2022) (no standing after exposure of names, addresses, and DLNs "because driver's license numbers do not provide hackers with a clear ability to commit fraud"); *In re Uber Techs, Inc. v. Data Sec. Breach Litig.,* 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) (no standing because "Plaintiff does not sufficiently explain[] how the hackers could use one's contact information and driver's license number to gain access to additional personal information"); *Antman v. Uber Techs., Inc.,* 2015 WL 6123054,

at *11 (N.D. Cal. Oct. 19, 2015) (no standing based on theft of names and DLNs because "there is no obvious, credible risk of identity theft that risks real, immediate injury").[4]

Plaintiffs argue that, unlike *Greenstein* and *Antman,* they allege "how" their exposed information could lead to fraud. Opp. at 3-4. But *Greenstein* addressed the same allegations as here and held, as a matter of law, that DLNs could not create a substantial risk of future harm because they were not "highly sensitive personal data." 585 F. Supp. 3d at 1227-28. *Compare* Compl. at ¶¶ 98-103 (allegations regarding how "hackers" use DLNs) with *Greenstein*, 585 F. Supp. 3d at 1224 ("Plaintiffs assert that 'PI of consumers remains of high value to criminals' and point to multiple news sources that highlight the pervasive danger of stolen identity credentials on the dark web" and "emphasize that driver's license numbers are a veritable 'gold mine' for bad actors"). *Antman*, despite similar allegations, held "[t]he name, driver's license, and [plaintiff's] bank account and routing information do not plausibly risk fraud" because "[i]t is not plausible that a person could apply for a credit card without a social security number[.]" 2018 WL 2151231, *2, 10-11 (citation omitted).

*Stallone* does not help Plaintiffs. Opp. at 4 (citing *Stallone v. Farmers Group, Inc.*, 2022 WL 10091489 (D. Nev. Oct. 15, 2022)). *Stallone*, the lone outlier in the Ninth Circuit finding standing based on DLN exposure, relied on the reasoning that "the rightful injury-in-fact determination is not to look at the minutia of what

---

[4] Plaintiffs argue "[w]here a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints," but cite cases involving exposure of far more sensitive information. Opp. at 3; *Owens v. Smith, Gambrell and Russell Int'l, LLP*, 2024 WL 3914663, at *1 (alleging exposure of "names, social security numbers, driver's license numbers, non-driver identification numbers and health information, including medical history, treatment and diagnosis"); *In re Adobe Sys., Inc. Priv. Litig.,* 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014) (alleging exposure of "names, usernames, passwords, email addresses, phone numbers, mailing addresses, [] credit card numbers and expiration dates").

information has been taken — such as credit card information — or social security numbers — but to specifically determine whether the data taken gave hackers the means to commit fraud or identity theft." 2022 WL 10091489, at *5 (internal quotations omitted). But *Stallone* glossed over that **DLNs cannot be used to open bank accounts or commit financial fraud**. *See Antman*, 2015 WL 6123054, at * 11 (exposure of name and DLN not traceable to fraudulent credit card opening because "[i]t is not plausible that a person could apply for a credit card without a social security number"); *Greenstein*, 585 F. Supp. 3d at 1227 ("driver's license numbers do not provide hackers with a clear ability to commit fraud").

*Stallone* is thus in conflict with Ninth Circuit authority holding standing is based on the sensitivity of the data **because less sensitive data does not create a threat of an imminent risk of harm.** *See e.g.*, *In re Zappos.com*, 888 F.3d 1020, 1023, 1027-29 (9th Cir. 2018) (where "names, account numbers, passwords, email addresses, billing and shipping addresses, telephone numbers, and credit and debit card information" exposed, "sensitivity of the stolen data" established "injury in fact based on a substantial risk" of future fraud); *Greenstein,* 585 F. Supp. 3d at 1227 ("injury-in-fact requirement will be satisfied when highly sensitive personal data, such as social security numbers and credit card numbers, are inappropriately revealed to the public").

**C. Plaintiffs do not allege any other basis for standing.**

Plaintiffs' remaining purported harms—mitigation efforts, emotional distress, diminished value of personal information, privacy invasion, benefit of the bargain, and delay in receiving notice—do not create Article III standing.

- <u>Mitigation</u>: Plaintiffs argue standing based on (1) "Plude's $300 for credit monitoring, McGlynn's $175 [for credit monitoring], and Geelen's $20 [for credit monitoring]" and (2) Plaintiffs' time "devoted to credit freezes, monitoring, and bank visits." Opp. at 6. But "mitigation expenses do not qualify as injury" when the risk of identity theft is not "real and imminent." *Antman*, 2015 WL 6123054, at *11; Mot. at 22. Because the disclosure of DLNs does

not create a real and imminent threat of harm, *see supra* II.B, mitigation expenses are not cognizable injuries-in-fact. Plaintiffs also ignore Farmers provision of two years of free credit monitoring services, Compl. ¶¶ 230, 268, 306, 5 n.3.

- Emotional distress: Because Plaintiffs fail to allege "an imminent and substantial risk of identity theft," their alleged emotional distress is not an injury-in-fact. *See Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *7 (C.D. Cal. Apr. 25, 2025) ("emotional distress" allegations fail to establish standing where "Plaintiffs failed to allege an imminent and substantial risk of identity theft").
- Diminished value of personal information: Plaintiffs concede they must "allege the existence of a market for PII and that their PII is now less valuable because of the data breach." Opp. at 5; *see also Greenstein,* 585 F. Supp. 3d at 1229 (diminished value allegations insufficient absent showing how breach caused "names, addresses, and driver's license numbers to be less valuable than before the breach" or that plaintiffs "had plans to sell" this information). But Plaintiffs do not explain how their information lost value or allege plans to sell it. Opp. at 5 (citing Compl. ¶¶ 92, 115, 151, 159). Plaintiffs cite *In re Yahoo! Inc.*, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017), but that case involved allegations that "PII is highly valuable … because Defendants use this information for 'targeted advertising'"—and, regardless, since 2017, courts have grown increasingly skeptical of this theory. *See, e.g.*, *Greenstein*, 585 F. Supp. 3d at 1229 ("Plaintiffs cannot rely on a loss of privacy to demonstrate diminution in value."); *Patterson v. Medical Review Inst. Of Am., LLC*, 2022 WL 2267673, at *3 (N.D. Cal. June 23, 2022) (no standing based on lost value of information because plaintiff "does not explain how his information is less valuable than before the breach, nor does he allege he had plans to sell or is prevented from selling such information in the future" (cleaned up)).

- Privacy: Plaintiffs do not attempt to address Farmers authorities that boilerplate privacy-invasion allegations, like those here, Compl. ¶¶ 174, 194, do not create standing. Mot. at 23; *see also, e.g.*, *In re Uber,* 2019 WL 6522843, at *5 ("conclusory allegation that the breach[] caused [plaintiff] a loss of privacy" insufficient to create standing). Courts look to the sensitivity of the data exposed and circumstances of the purported privacy invasion.[5]
- Benefit of the bargain: Plaintiffs' insurance policies show the bargain they struck with Farmers was for insurance, and Plaintiffs have not alleged any issues with their insurance. Plaintiffs attempt to recast their insurance contracts as collateral to an agreement regarding "data-security," Opp. at 6, but nowhere in the Complaint do Plaintiffs allege they purchased data-security services from Farmers and that insurance was ancillary—the entire point of Plaintiffs' relationship with Farmers was for insurance. *See, e.g.* Compl. ¶¶ 35-36; *see also Fernandez v. Leidos, Inc.,* 127 F. Supp. 3d 1078, 1089 (2015) (no standing based on benefit-of-the-bargain argument where plaintiff failed to allege healthcare and insurance coverage was impacted by data breach).
- Notification delay: Plaintiffs argue that the 3-month "delay" between the Incident and notice "deprived them of the opportunity to freeze credit and take protective steps." Opp. at 6. But Plaintiffs do not allege *actual harm* because they did not "take protective steps" during that time. Though Plaintiffs allege "McAfee flagged [McGlynn's] data on the dark web shortly after" the Incident and the alleged "fraud against Harris and Scorio" occurred during the 3-month period, *id.* at 6-7, as explained above, none of these purported harms are logically connected to the Incident. *See supra* II.A.1. Plaintiffs argue "Farmers raised an

[5] Plaintiffs cite *In re Facebook Internet Tracking Litig.*, but it involved website tracking claims and allegations Facebook "gained a cradle-to-grave profile without users' consent." 956 F.3d 589, 598-99 (9th Cir. 2020). Plaintiffs also cite *Stasi v. Inmediata Health Grp. Corp.*, but it involved disclosure of sensitive medical information. 501 F. Supp. 3d 898, 906 (S.D. Cal. 2020).

identical no-incremental-harm argument in *Stallone* and lost[.]" Opp. at 6 (citing *Stallone*, 2022 WL 10091489). *Stallone* did not involve a factual challenge undermining allegations of actual misuse.

Plaintiffs also argue standing to seek injunctive relief regarding Farmers security measures "because Farmers continues to retain" their personal information. Opp. at 7. But their information has already been exposed, and the harm has already occurred and, so injunctive relief would not redress their alleged harms. Mot. at 24 n.4; *Spokeo v. Robins,* 578 U.S. 330, 338 (2016) (Article III requires injury "that is likely to be redressed by a favorable judicial decision.").

## III. PLAINTIFFS FAIL TO ALLEGE ANY STATUTORY CLAIMS.

### A. Plaintiffs concede the Complaint fails to allege the law governing the common-law claims.

Plaintiffs concede the Complaint does not identify which state's law governs their claims, but now argue for the first time in their Opposition they are asserting "nationwide claims … under California law." Opp. at 9. Plaintiffs are not permitted to backfill their Complaint with their Opposition. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)); *Moser v. Health Care Servs. Corp.*, 2026 WL 1625351, at *2 (C.D. Cal. June 1, 2026) ("In Opposition, Plaintiff attempts to supplement the Complaint through various exhibits and factual allegations. But it 'is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)). As Plaintiffs did not plead which state law applies, dismissal of the common-law claims (Counts I through VII and X) is required. Mot. at 24; *see also, e.g.*, *Rodriguez v. Just Brands USA, Inc.,* 2021 WL 1985031, at *7 (C.D. Cal. May 18, 2021) (dismissing common-law claim for failure to allege applicable state law).

**B. Plaintiffs' non-California statutory claims must be dismissed if California law governs.**

Though Plaintiffs are bound by the Complaint's allegations, if California law applies, then the non-California statutory causes of action must be dismissed—*i.e.*, their claims under the Michigan Consumer Protection Act (Count XV), Nebraska Consumer Protection Act (Count XVI), Nebraska Uniform Deceptive Trade Practices Act (Count XVII), New Jersey Customer Security Breach Disclosure Act (Count XVIII), New Jersey Consumer Fraud Act (Count XIX), Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count XX), and Texas Deceptive Trade Practices-Consumer Protection Act (Count XXI). Courts routinely dismiss state statutory claims when the laws of a different state govern the dispute. *See, e.g.*, *ADT LLC v. Vision Sec., LLC*, 2014 WL 3764152, at *7 (S.D. Fla. July 30, 2014) (following choice-of-law analysis, dismissing Florida Deceptive & Unfair Trade Practices Act claim because "[w]hen a district court determines that Florida law does not apply, a plaintiff lacks standing to bring a suit under the [Act]."); *Heinz v. Amazon.com Inc.*, 2024 WL 2091108, at *5 (W.D. Wash. May 8, 2024) (holding Washington choice-of-law clause applies and therefore dismissing California Invasion of Privacy Act and California UCL claims); *Lipman Bros. v. Apprise Software, Inc.*, 2015 WL 4476983, at *9 (E.D. Pa. July 22, 2015) (dismissing Tennessee Consumer Protection Act claim because Pennsylvania choice-of-law clause applies); *Bulldog New York LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 162 (D. Conn. 2014) (on summary judgment, whether New York or Connecticut law applied governed whether the plaintiff could bring a claim under the Connecticut Uniform Trade Secrets Act).

**C. Plaintiffs' statutory consumer-protection claims also fail to allege fraudulent or unfair conduct.**

Plaintiffs' non-California statutory consumer-protection claims also all fail on their merits. First, as to misrepresentation theories, Plaintiffs' claims sound in fraud, but Plaintiffs do not plead any specific statements Farmers made or any intent to

deceive sufficient to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *See* Mot. at 34-35. Plaintiffs merely point to *In re Capital One Data Sec. Breach Litig.*, which has no bearing because the plaintiffs there alleged specific facts demonstrating the defendants' knowledge of falsity. 488 F. Supp. 3d 374, 419 (E.D. Va. 2020) (alleging defendants "announced that they had developed a software … to solve the security problems" but it "did not actually resolve the issue"). Second, regarding unfair-practices theories, Plaintiffs concede they do not allege any unfair conduct in connection with Farmers sale of insurance policies. *See* Opp. at 18-19; *see also, e.g.*, *Angus v. Flagstar Bank, FSB,* 2025 WL 937760, at *4 (E.D. Mich. Mar. 27, 2025) (dismissing NJCFA claim in data-breach case because defendant's alleged failure to safeguard PII occurred after plaintiff chose to transact with and entrust PII to defendant).

### D. Plaintiff Harris fails to allege California claims under the CCPA, UCL, CCRA, and California Constitution.

<u>CCPA</u>: The CCPA requires 30 days' written notice "before initiating litigation" for statutory damages, but Harris sent notice only 11 days before filing the Complaint and **no** notice was sent to Defendants FIE, Truck, or Fire. *Griffey v. Magellan Health Inc.,* 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (requiring 30-day notice); Opp. at 19; Mot. at 36. Plaintiffs vaguely allege a "September 8 notice," which Harris did not send, but provide no details about this "notice." Opp. at 19. Harris accordingly failed to comply with CCPA's notice requirements, mandating dismissal of the damages claim. *See Griffey*, 2022 WL 1811165, at *6 (dismissing CCPA claim where plaintiff "alleges that he gave notice … three days before filing his California CPA claim."). Plaintiffs cite *In re Snowflake, Inc.* for the proposition that the September 8 letter, not sent by Harris, is sufficient, but there a notice letter was sent for the named plaintiff. 2025 WL 3012889, at *15 (D. Mont. Oct. 28, 2025).

Plaintiffs also assert, without support, that "Farmers has not cured the claimed violations" or that Farmers did not provide the details of *how* it cured the alleged

violations. Opp. at 19. But this ignores Farmers letter that "[n]o further similar incidents have occurred, nor will any CCPA violations occur going forward because Defendants have previously and do now maintain rigorous and appropriate cybersecurity measures and vendor supervision." DeGroot Decl. Ex. C. This is sufficient. *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *26 (D. Mass. July 31, 2025) (dismissing CCPA claim when defendants "stated in their [cure] letter that [defendant] had implemented [breached entity's] patches"). Plaintiffs do not attempt to address *In re MOVEit* or why it should not be followed here. Plaintiffs also argue Farmers did not explain how its "enhanced security measures actually cured the alleged CCPA violation," citing *Florence v. Order Express, Inc*. Opp. at 19. But in *Florence*, the court sustained a CCPA claim, despite the defendant's notice that it cured the purported violations, because the plaintiff alleged the defendant did not implement the cure. No such allegations are present here, and Farmers explanation of a cure is in line with the explanation the *MOVEit* court approved. 674 F. Supp. 3d 472, 476, 483 (N.D. Ill. 2023).

<u>UCL</u>: Plaintiffs argue Harris has statutory standing because "Harris experienced a fraudulent charge of $300" and related "out-of-pocket costs, financial harm, reduced access to her banking accounts, and the need to obtain a new debit card on three separate occasions." Opp. at 16. But, again, Harris alleges the exposure of her DLN—not information useful for fraudulent financial transactions.[6] Harris's claim is thus not plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)).

---

[6] Plaintiffs' sole case sustaining a UCL claim involved the disclosure of more sensitive information. Opp. at 16; *Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 WL 16894503, at *1 (C.D. Cal. July 29, 2022) (alleging disclosure of "Social Security numbers, birthdates, and financial information").

CCRA: Plaintiffs argue Farmers "delay" in providing notice of the Incident "impaired [Harris's] ability to mitigate its consequences" and allege Harris suffered financial fraud. Opp. at 20. But as detailed above, this alleged fraud is not plausibly connected to the Incident. Plaintiffs' two cases do not help their argument. *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.* involved far more sensitive information, including "financial information," and the five-month delay "prevented Plaintiffs from taking steps to protect their personal information from identi[t]y theft." 613 F. Supp. 3d 1284, 1293, 1300 (S.D. Cal. 2020). In *In re Yahoo! Inc.*, "Defendants delayed in notifying Plaintiffs of the Data Breaches for a year to two years," during which time hackers used the email login information they stole to access those email accounts. 2017 WL 3727318, at *2, 3, 13, 41. Here, Harris does not allege the theft of information that could have caused financial fraud.

California Constitution: Plaintiffs do not contest that a claim for invasion of privacy under the California Constitution requires *intentional* intrusion. Mot. at 28; *Llerandi*, 2019 WL 6655399, at *3 (failure to address argument "is grounds for granting the Motion [to dismiss] as to these claims"). Because Plaintiffs fail to allege Farmers intentionally intruded on their privacy, Count XIV must be dismissed. *See Smith v. Sabre Corp.*, 2017 WL 11678765, at *6 (C.D. Cal. Oct. 23, 2017) (dismissing constitutional privacy claim and noting "courts reject invasion of privacy claims absent facts demonstrating an intentional (as opposed to negligent) violation of privacy").

**E. Plaintiffs allege an adequate remedy at law.**

Plaintiffs' equitable claims are precluded because money damages are adequate. Compl. ¶¶ 343, 351, 361, 375, 417, 442, 473, 481, 493, 501, 511, 522 (seeking damages under negligence and contract theories, DPPA, and state statutes), Prayer (requesting "actual, compensatory, and/or statutory damages, and punitive damages"). Dismissal of equitable claims under *Sonner* is proper where Plaintiffs have an adequate legal remedy. *Krantz v. Old Cooper Company, Inc.*, 2026 WL 1850034, at *5 (C.D. Cal. Apr. 28, 2026) (dismissing California statutory claims for restitution because "[n]one

of Plaintiffs' allegations suggest that monetary damages would be inadequate to compensate Plaintiffs for their alleged past harms"); *Cassandra Webb v. Puffy LLC*, 2025 WL 5085526 (C.D. Cal. Dec. 2, 2025) (dismissing California statutory claims for restitution).

Here, Plaintiffs concede money damages would be adequate, but argue they are entitled to "forward-looking injunctive relief," Opp. at 16, because "if a second breach occurs," they may suffer unspecified injuries that may not be remedied by damages. Compl. ¶¶ 406, 463; Opp. at 16 (citing Compl. ¶ 161). Plaintiffs offer no allegations as to "why monetary damages would not provide adequate relief." *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (dismissing equitable claims where, "[a]s to potential future breaches, Plaintiff offers no explanation why monetary damages would not provide adequate relief"); *see also Clark v. Am. Honda Motor Co., Inc.*, 528 F. Supp. 3d 1108, 1121-22 (C.D. Cal. 2021) (dismissing claims for equitable relief because "under *Sonner*, Plaintiffs must allege that they lack an adequate remedy at law to seek injunctive relief").

## IV. PLAINTIFFS' COMMON-LAW CLAIMS FAIL.

### A. Plaintiffs fail to plead negligence.

#### 1. The economic loss doctrine bars Plaintiffs' claim.

<u>Express contracts bar the claim</u>. Plaintiffs argue the economic loss rule "does not bar negligence claims arising from data breaches" but ignore their express contracts with Farmers. Opp. at 9; Mot. at 25. Plaintiffs may not recover in tort "'purely economic losses that may be recovered in a contract action.'" *Widjaja v. JPMorgan Chase Bank, N.A.*, 2019 WL 8108716 (C.D. Cal. Nov. 19, 2019) (Fitzgerald, J.) (dismissing negligence claim for unauthorized charge on plaintiff's account due to contractual relationship). Plaintiffs' reliance on *In re Ambry Genetics Data Breach Litig* and *Stasi* is thus misplaced—both cases rejected the economic loss rule because there were no express contracts. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143-44 (C.D. Cal. 2021) (dismissing breach of express contract claim

because "there is no independent contractual agreement in which [defendants] assumed obligations regarding data security or data breach notification."); *Stasi,* 501 F. Supp. 3d at 913 (economic loss rule did not apply in part where parties "were not in privity of contract").

<u>Plaintiffs' losses are economic and not adequately alleged</u>. Plaintiffs attempt to escape the economic loss doctrine by arguing they "allege more than pure economic loss" in the form of "actual misuse" of their information, "deprivation of the value" of their information, time spent on mitigation, privacy invasion, and emotional distress. Opp. at 9-10. First, aside from privacy invasion and emotional distress, these losses are economic:

- Actual misuse: Plaintiffs allege Scorio and Harris experienced financial fraud leading to monetary losses. Compl. ¶ 191 (Scorio "suffered from the misuse of her Private Information whereby cybercriminals … placed fraudulent charges on her bank account for approximately $100"), ¶ 211 (Harris "suffered from the misuse of her Private Information whereby cybercriminals … placed a fraudulent charge of approximately $300").
- Value deprivation: Plaintiffs allege their information lost monetary value. Compl. ¶¶ 175, 195, 215, 234, 252, 271, 290, 310 (alleging "damages to and diminution in the value" of Plaintiffs' information); *see also Morales v. Conifer Revenue Cycle Sols., LLC*, 2025 WL 1096396, at *4 (C.D. Cal. Mar. 31, 2025) (dismissing negligence claim under economic loss rule where plaintiffs allege "diminution in the value" of their information).
- Mitigation time: Time spent on mitigation efforts after a security incident is an economic loss. *See, e.g.*, *Morales*, 2025 WL 1096396, at *4 (dismissing negligence claim under economic loss rule where plaintiffs allege "lost time … to mitigate the risk of misuse of their data").

Second, as to privacy invasion and emotional distress, Plaintiffs ignore that conclusory allegations, without sensitive data exposure (like here), are insufficient to plead either purported harm. *See* Mot. at 22-23.

Plaintiffs' remaining cases involved courts holding that "loss of use of [the plaintiffs'] identity because of the Data Breach, loss of time, and imminent risk of identity theft" constituted non-economic harms,[7] but Plaintiffs have not alleged "loss of use" of their information or adequately alleged harms resulting from lost time or future risk of identity theft. *See supra* II.B.

<u>There is no special relationship</u>. Plaintiffs assert, without any explanation, that they have a "special relationship" with Farmers precluding the economic loss rule. Opp. at 10. Plaintiffs cannot rely on an alleged special relationship because their entire relationship with Farmers is based on obtaining insurance pursuant to express contracts. *In re Episource LLC Data Breach Litig.*, 2026 WL 2111881, at *1, 12 (C.D. Cal. July 13, 2026) (economic loss rule barred negligence claim in data breach case against "health care service plans, insurers, and related health care companies that contracted with Episource and provided it with the identification and health information of their members and patients"). Courts in this District have routinely declined to consider the "special relationship" exception "when, as here, the plaintiff is not a third party to a transaction but has a direct contractual relationship with the defendant[.]" *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *11 (C.D. Cal. Apr. 13, 2017) (dismissing negligent misrepresentation claim under economic loss rule); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D.

---

[7] *In re Snowflake, Inc., Data Sec. Breach Litig.*, 2025 WL 3012889, at *10 (D. Mont. Oct. 28, 2025) ("Consumer Plaintiffs sufficiently have plead allegations of the loss of use of their identity because of the Data Breach, loss of time, and imminent risk of identity theft. These allegations constitute non-economic harms."); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2025 WL 2393024, at *8 (D. Nev. Aug. 15, 2025) (same).

Cal. 2017) (dismissing negligence claim under economic loss rule and holding special relationship exception not applicable where parties "are in privity of contract").[8]

**2. Plaintiffs do not allege damages.**

Plaintiffs concede, as they must, that they cannot pursue negligence damages based on a future-risk-of-harm theory. *See* Mot. at 26; *see, e.g.*, *Holly v. Alta Newport Hosp.,* Inc., 2020 WL 6161457, at *4 (C.D. Cal. Oct. 21, 2020) ("bare allegation of increased risk of identity theft" "too speculative to satisfy the pleading requirement to show actual damages"). Plaintiffs instead argue damages based on "(1) spending time and effort mitigating the nonspeculative risk of identity theft, (2) addressing actual instances of fraud, (3) not obtaining the benefit of their bargain, (4) privacy harms, and (5) emotional distress[.]" Opp. at 10. But, as discussed above, Plaintiffs' allegations of actual misuse are not plausible and their remaining harms are not cognizable given, *inter alia*, the lack of sensitive data exposure. *See supra* II.A.

Plaintiffs' cited cases do not compel a different outcome because they involve far more sensitive information that could have actually caused the alleged harms. Opp. at 10. For example, *In re Solara* involved the theft of "Social Security numbers, Employee Identification Numbers, confidential medical information, health insurance information, Medicare and Medicaid IDs, as well as financial information." 613 F. Supp. 3d at 1293. In *Peralta v. Certified Emp. Screening Inc.*, the Court held "actual loss" for purposes of negligence had been alleged where SSNs had been exposed in a data breach. 2025 WL 1723142, at *6 (C.D. Cal. May 7, 2025). By contrast here, far more limited information was allegedly exposed in the Incident.

[8] Plaintiffs' cases do not involve parties in contractual privity and are irrelevant. Opp. at 10 (citing *In re Accellion,* 713 F. Supp. 3d 623, 634, 638 (N.D. Cal. 2024) and *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *3, 8 (C.D. Cal. Dec. 29, 2016)).

### B. Plaintiffs cannot maintain a breach of confidence claim.

Under California law and Plaintiffs' own authority, Plaintiffs cannot sustain their breach of confidence claim where an express contract governs. *See Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (affirming no punitive damages for breach-of-confidence because it "is grounded on an implied-in-law or quasi-contractual theory . . . that is coterminous with his claim for express breach of the NDA claim" and "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." (citations and quotations omitted)). Because Plaintiffs' contracts with Farmers encompass data security, Plaintiffs cannot pursue relief under a breach-of-confidence theory. *See* Witkowski Decl., ¶¶ 2-28.

### C. Plaintiffs' express contracts also preclude their implied contract and unjust enrichment claims.

Plaintiffs' insurance contracts preclude the quasi-contract claims. Plaintiffs concede "they provided their PII to Farmers and paid premiums in reliance on Farmers' representations, including those in the Privacy Policy[.]" Opp. at 13. First, the crux of this action is Plaintiffs' insurance relationship with Farmers. Second, Plaintiffs do not dispute that the privacy notices were incorporated into their insurance contracts covering the subject matter of this dispute. *See, e.g., Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (Under California law, "an action based on an implied-in-fact contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.") (cleaned up); *Milan v. JPMorgan Chase Bank, N.A.,* 2025 WL 3295323, at *8 (C.D. Cal. Nov. 26, 2025) ("an unjust enrichment [] claim 'cannot lie' where a valid express contract governs the same subject matter"). Though Plaintiffs now claim "the insurance policies do not … bind every Defendant," Opp. at 14, Plaintiffs allege in the Complaint "Defendants hold themselves out as operating as a single entity under the names 'Farmers' and 'Farmers

Insurance Group Companies'" and treat them as a single unified entity for purposes of pleading their claims. Compl. ¶ 20; *see also id.* ¶¶ 22-26.

**D. Plaintiffs' allegations preclude an invasion of privacy claim.**

Plaintiffs concede that common-law invasion of privacy claims require "a defendant [to have] intentionally intruded" into a plaintiff's privacy. Opp. at 11 (citation omitted). Plaintiffs fail to allege that Farmers intentionally exposed Plaintiffs' information. Rather, Plaintiffs affirmatively allege that unauthorized third parties stole the information through a Farmers vendor *without Farmers consent*. Compl. ¶ 46. Plaintiffs' cases are easily distinguished.

The court in *In re Sequoia Benefits & Ins. Data Breach Litig.* dismissed an invasion of privacy claim because "Plaintiffs fail to allege the requisite intentional conduct by Defendants" and noted "the weight of authority makes clear that an actionable invasion of privacy claim requires more than negligent conduct alone." 2024 WL 1091195, at *6 (N.D. Cal. Feb. 22, 2024). Finally, the claims in *In re Facebook Internet Tracking Litig*. involved website activity tracking—not third-parties exfiltrating information without authorization. 956 F.3d at 596-97.[9]

## V. CONCLUSION

For the foregoing reasons, Farmers respectfully requests dismissal of the Complaint.

---

[9] Because none of Plaintiffs' claims can proceed, Plaintiffs' claims for declaratory and injunctive relief must also be dismissed. Opp. at 20-21.

Dated: August 28, 2026

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
Isabelle Ord
Attorney for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE

## **Certificate of Compliance**

Pursuant to Local Rule 11-6.2, the undersigned, counsel of record for Defendants Farmers Insurance Exchange, Farmers Group Inc., Farmers New World Life Insurance Company, Truck Insurance Exchange, and Fire Insurance Exchange certifies that this brief contains 6,539 words, which complies with the word limit of Local Rule 11-6.1.

Dated: August 28, 2026

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
Isabelle Ord
Attorney for Defendants
FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS NEW WORLD LIFE INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND FIRE INSURANCE EXCHANGE